# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3631

_____

Lovely Skin, Inc.

*Plaintiff - Appellant*

v.

Ishtar Skin Care Products, LLC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: November 22, 2013
Filed: March 13, 2014

_____

Before WOLLMAN, COLLOTON, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Lovely Skin, Inc. ("Lovely Skin") brought a four-count complaint against Ishtar Skin Care Products, LLC ("Ishtar"), alleging trademark infringement and false designation of origin under the Lanham Act, and common law unfair competition and injury to business reputation in violation of Nebraska law. Ishtar counterclaimed, seeking cancellation of the registrations of Lovely Skin's two trademarks. After a bench trial, the district court canceled the registrations and entered judgment for Ishtar

on all four counts of Lovely Skin's complaint.  Lovely Skin appeals.  For the reasons discussed below, we reverse the district court's judgment canceling Lovely Skin's trademark registrations and otherwise affirm its judgment in favor of Ishtar.

I.

Lovely Skin was incorporated in Nebraska in 2003 and is owned by Dr. Joel Schlessinger, a dermatologist, and his wife Nancy Schlessinger.  Lovely Skin retails cosmeceutical skin care products, which are cosmetics with pharmaceutical benefits.  Lovely Skin carries both dermatologist-recommended, third-party skin care products and its own products under the brand name "Lovely Skin."  These products range in price from approximately $3 to $400.  Lovely Skin primarily sells the products through its website www.LovelySkin.com.

Starting in 2003, Lovely Skin began purchasing keywords from internet search engine companies to drive customers to its website.  By purchasing keywords, Lovely Skin's website appeared toward the top of the search results web page when an internet user searched for any of the purchased keywords.  Lovely Skin paid each search engine provider based on the number of users who, after searching for a keyword, then accessed its website.  Currently, Lovely Skin purchases approximately 10,000 different keywords, including the names of its most well-known products.  From 2003 to 2005, Lovely Skin spent more than $489,000 on keyword advertising, and from 2006 to 2007, Lovely Skin spent more than $577,000.  Lovely Skin also advertised by distributing a catalog through the mail, purchasing print advertisements, and sending an electronic newsletter.  In 2010, Lovely Skin retained Megan Driscoll, a public relations consultant, to garner national media coverage for its brand.  As a result of this advertising and media coverage, Lovely Skin's revenue grew steadily: from approximately $300,000 in 2002, to $700,000 in 2003, to $5.1 million in 2005, and to $13 million in 2011.

Lovely Skin's website was originally operated by Dr. Schlessinger's medical practice, Skin Specialists.[1] In 1999, Skin Specialists hired attorney Keith Green to file applications to register its marks, LOVELYSKIN and LOVELYSKIN.COM. Green filed applications with the United States Patent and Trademark Office ("PTO") in 1999. However, the PTO refused to register either of the marks on the Principal Register because it determined that both marks were "merely descriptive." The marks were then placed on the Supplemental Register.[2] In 2004, Lovely Skin hired Green to prepare and file an application to register the mark LOVELYSKIN on the Principal Register pursuant to § 2(f) of the Lanham Act, which permits merely descriptive marks to be registered if they have acquired distinctiveness. *See* 15 U.S.C. § 1052(f). Green delegated the task to Kristin Carnaby, an associate at his law office. In its application, Lovely Skin declared that its mark had "become distinctive of the goods/services through the applicant's substantially exclusive and continuous use in commerce for at least the five years immediately before the date of this statement." Green did not perform an investigation into whether Lovely Skin's use of the mark had been substantially exclusive, and neither he nor Carnaby can remember if Carnaby performed such an investigation. The PTO registered the trademark LOVELYSKIN and placed it on the Principal Register on September 20, 2005. In 2006, Lovely Skin applied to register LOVELYSKIN.COM, and in January 2007, an amendment was made to that application to add a claim that LOVELYSKIN.COM had acquired distinctiveness based on Lovely Skin's ownership of the registration for

---

[1]Skin Specialists assigned the website to Lovely Skin in 2003.

[2]"A mark that does not meet all the requirements for registration on the Principal Register, but that is 'capable of distinguishing the applicant's goods or services,' may be registered on the Supplemental Register." *In re Bush Bros & Co.*, 884 F.2d 569, 570 (Fed. Cir. 1989) (internal citation omitted) (quoting 15 U.S.C. § 1091). Therefore, "a mark that is ineligible for registration on the Principal Register because it is 'merely descriptive' of the goods or services may be registered on the Supplemental Register." *Id.* (internal citation omitted) (quoting 15 U.S.C. § 1052(e)).

LOVELYSKIN.  The PTO also registered LOVELYSKIN.COM and placed it on the Principal Register on June 19, 2007.

In March 2006, Lovely Skin became aware of the website, www.livelyskin.com, which sells many of the same products that Lovely Skin sells through its website.  Ishtar, a California limited liability corporation owned by Sharokin Vardeh, registered www.livelyskin.com with internet domain registrar GoDaddy on November 14, 2005.  At the time Ishtar registered its website, it was unaware of Lovely Skin or its website.  Ishtar is a much smaller retailer than Lovely Skin and has earned approximately $2 million in total revenue between 2005 and 2010.  Lovely Skin alleges that it experienced an instance of consumer confusion between Lovely Skin's and Ishtar's websites in March 2008, when a customer emailed Cathy Huftless, Lovely Skin's Director of Internet Sales.  The customer was replying to an email she received from Lovely Skin when she attempted to send a copy of the email to Huftless at "Cathy@livelyskin.com."  Dr. Schlessinger also claims that since 2009, Lovely Skin  was "seeing quite a bit of instances both orally and a couple written instances of confusion" between LovelySkin.com and Ishtar's website.  Vardeh claims, however, that she has never observed any instances of consumer confusion.

On May 15, 2009, Lovely Skin sent a letter to Vardeh, which was returned unclaimed, demanding that Ishtar discontinue the use of its website.  Lovely Skin then brought this lawsuit in March 2010.  Ishtar answered, asserting affirmative defenses, and counterclaimed seeking cancellation of the registrations of Lovely Skin's trademarks pursuant to 15 U.S.C. §§ 1064 and 1119.  The case proceeded to a bench trial.  At trial, Ishtar sought to demonstrate that Lovely Skin's trademarks had not acquired distinctiveness when they were registered.  To do so, Ishtar presented evidence of third parties using marks similar to Lovely Skin's trademarks, testimony of Green and Carnaby about the trademarks' application process, and testimony of Dr. Schlessinger regarding Lovely Skin's claim of substantially exclusive use.  Lovely

Skin defended its registrations by presenting evidence of its substantial advertising expenditures and revenue growth. Additionally, Lovely Skin sought to prove its various claims by demonstrating that Ishtar's website creates a likelihood of confusion with Lovely Skin's trademarks. Driscoll, Lovely Skin's public relations consultant, testified as an expert witness that Lovely Skin's trademarks were well known and that its brand awareness was high. Driscoll also explained that the products that Lovely Skin sells are "prestige" products.

The district court found for Ishtar on all of Lovely Skin's claims and on Ishtar's counterclaims, resulting in the cancellation of Lovely Skin's trademark registrations. Lovely Skin then timely filed this appeal.

## II.

A "trademark" is "any word, name, symbol, or device, or any combination thereof—used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown."[3] 15 U.S.C. § 1127. The Lanham Act grants the "owner of a trademark used in commerce" the right to apply for registration of its trademark on the Principal Register. 15 U.S.C. § 1051. The Lanham Act prohibits, however, the registration of marks on the Principal Register that are merely descriptive, unless the mark has become distinctive of the registrant's goods in commerce. 15 U.S.C. §§ 1052(e)-(f). In determining whether a mark has acquired

---

[3]Similarly, a "service mark" is "any word, name, symbol, or device, or any combination thereof—used by a person . . . to identify and distinguish the services of one person, including a unique service, from the services of others and to indicate the source of the services, even if that source is unknown." 15 U.S.C. § 1127. While LOVELYSKIN is registered as a trademark and LOVELYSKIN.COM is registered as a service mark, the parties have consistently referred to both as "trademarks," as we will throughout our opinion.

distinctiveness, *i.e.*, secondary meaning, "the chief inquiry is whether in the consumer's mind the mark has become associated with a particular source." *Co-Rect Prods., Inc. v. Marvy! Advertising Photography, Inc.*, 780 F.2d 1324, 1332-33 (8th Cir. 1985). Under § 2(f), "[t]he Director may accept as prima facie evidence that the mark has become distinctive, as used on or in connection with the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for five years before the date on which the claim of distinctiveness is made." 15 U.S.C. § 1052(f). A mark registered on the Principal Register is presumed to be valid, 15 U.S.C. § 1057(b), and "the presumption of validity is a strong one," *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1115 (9th Cir. 2010). As relevant here, the presumption of validity that attaches to a § 2(f) registration includes a presumption that the registered mark has acquired distinctiveness, or secondary meaning, at the time of its registration. *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 870 (8th Cir. 1994).

The Lanham Act provides that a registration issued under the Act "shall be prima facie evidence of . . . [a] registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(a). It also "provides . . . two avenues of affirmative defense to a party charged with infringement of a registered mark." *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 373 (1st Cir. 1980). First, the alleged infringer may prove "any legal or equitable defense or defect . . . which might have been asserted if such mark had not been registered." 15 U.S.C. § 1115(a). Second, the alleged infringer may seek cancellation of the registrant's trademark registration either as a counterclaim in the infringement suit or as a separate and independent action. *Keebler Co.*, 624 F.2d at 373; *see also* 15 U.S.C. § 1064. If the cancellation action is filed within five years of the registration of the mark sought to be canceled, as it was here, "[a]ny ground that would have prevented registration in the first place qualifies as a valid ground for cancellation." *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 946 (Fed. Cir. 2000); *see also* 15 U.S.C. § 1064. When a mark is registered under § 2(f), lack of acquired distinctiveness at the time of registration is a valid ground for

cancellation. *Neapco, Inc. v. Dana Corp.*, 12 U.S.P.Q.2d 1746, 1989 WL 274388, at *1 (T.T.A.B. Aug. 30, 1989). "Due to [a registered mark's] presumption of validity, the burden of persuasion in a cancellation proceeding rests on the party seeking to cancel the registration." *Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 1356 (Fed. Cir. 2009). Thus, a party seeking to cancel a registration has the burden of persuasion to rebut the trademark's presumption of validity by a preponderance of the evidence. *Id.* "Initially, the party seeking cancellation also bears the 'burden to establish a prima facie case' that the registration is invalid." *Id.* at 1358 (quoting *Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 1579 n.9 (Fed. Cir. 1988)). In a § 2(f) case, this means that the party seeking cancellation must establish a prima facie case of no acquired distinctiveness. *Id.* If the party seeking cancellation establishes a prima facie showing of invalidity, "[t]he burden of producing additional evidence or argument in defense of registration . . . shifts to the registrant." *Id.* The court then must "decide whether the party seeking cancellation has satisfied its ultimate burden of persuasion, based on all the evidence made of record during prosecution and any additional evidence introduced in the cancellation proceeding." *Id.*

III.

With that background in mind, we turn to Lovely Skin's two arguments on appeal. First, Lovely Skin argues that the district court erred in canceling the registrations of its trademarks. Second, Lovely Skin argues that the district court erred in finding that there is no likelihood of confusion between its trademarks and livelyskin.com. After a bench trial, we review the district court's legal conclusions and mixed questions of law and fact *de novo* and its factual findings for clear error. *Ams. United for Separation of Church & State v. Prison Fellowship Ministries, Inc.*, 509 F.3d 406, 413 (8th Cir. 2007). "[W]here there are two permissible views of the evidence, the [district court's] choice between them cannot be clearly erroneous." *Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011).

A.

We first consider Lovely Skin's argument that the district court erred in canceling Lovely Skin's trademark registrations. The district court canceled Lovely Skin's trademark registrations because it found that Ishtar had demonstrated that they lacked acquired distinctiveness at the time they were registered. As a preliminary matter, Lovely Skin argues that the district court applied the incorrect legal standard when it found that Ishtar satisfied its burden to rebut the presumption that Lovely Skin's trademarks had acquired distinctiveness as of the date of their registrations through five years of continuous and "exclusive" use, rather than through "substantially exclusive" use, as the statute requires. *See* 15 U.S.C. § 1052(f). Although the district court initially stated the correct standard, when it reached its conclusion, it found that "Ishtar has satisfied its burden to rebut the presumption that Lovely Skin Marks had acquired distinctiveness through five years of continuous and *exclusive* use as of the date of their registrations." *Lovely Skin, Inc. v. Ishtar Skin Care Prods., LLC*, No. 8:10-cv-00087, 2012 WL 4711917, at *8 (D. Neb. Oct. 3, 2012) (emphasis added). Whether the district court applied the correct legal standard is a debatable issue, *see Wise v. Bowersox*, 136 F.3d 1197, 1203 (8th Cir. 1998), that we need not decide. If the district court applied the correct legal standard, we would reverse if its factual finding constitutes clear error. *Shoppers Fair of Ark., Inc. v. Sanders Co.*, 328 F.2d 496, 499 (8th Cir. 1964) (holding that a finding of acquired distinctiveness is a question of fact reviewed for clear error); *see also Co-Rect Prods.*, 780 F.2d at 1328 n.5. If the district court applied the incorrect standard, we may reverse without remanding if "the record permits only one resolution of the factual issue." *Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982). Either way, we conclude that reversal is appropriate.

Lovely Skin's trademarks LOVELYSKIN and LOVELYSKIN.COM were registered pursuant to § 2(f), and therefore, in their applications, Lovely Skin had to demonstrate that those marks had acquired distinctiveness. *See* 15 U.S.C. § 1052(f).

In its 2004 application for LOVELYSKIN, Lovely Skin declared that the mark had "become distinctive of the goods/services through the applicant's substantially exclusive and continuous use in commerce for at least the five years immediate before the date of this statement." In its LOVELYSKIN.COM application, Lovely Skin relied on its LOVELYSKIN registration to demonstrate acquired distinctiveness of its LOVELYSKIN.COM mark. The PTO accepted Lovely Skin's declarations as prima facie evidence of acquired distinctiveness and registered the marks. *See* 15 U.S.C. § 1052(f). "[T]he federal officials who register a mark . . . have some expertise in assessing if it is entitled to registration." *Zobmondo Entm't, LLC*, 602 F.3d at 1115; *see also Curtis-Stephens-Embry, Co. v. Pro-Tek-Toe Skate Stop, Co.*, 199 F.2d 407, 414 (8th Cir. 1952). Thus, Lovely Skin's trademarks are entitled to a strong presumption of validity that includes a presumption that its trademarks had secondary meaning at the time of their registrations. *See Aromatique, Inc.*, 28 F.3d at 870; *Zobmondo Entm't, LLC*, 602 F.3d at 1115.

Ishtar sought to cancel the registrations of Lovely Skin's trademarks based on lack of acquired distinctiveness at the time of their registrations, which is a valid ground for cancellation. *See Neapco, Inc.*, 1989 WL 274388, at *1. Ishtar, as the party seeking cancellation, had both the initial burden to establish a prima facie case that Lovely Skin's trademarks had not acquired distinctiveness at the time of their registrations and the ultimate burden of persuasion to prove that Lovely Skin's trademarks were invalid by a preponderance of the evidence. *See Cold War Museum, Inc.*, 586 F.3d at 1358. In order to satisfy its burdens, Ishtar sought to demonstrate that the use of Lovely Skin's trademarks had not been substantially exclusive in the five years preceding their applications and, therefore, establish that the trademarks lacked acquired distinctiveness at the time of their registrations. The only evidence that Ishtar presented, though, was several federal trademark registrations and state business entity registrations of third parties whose marks or business names contained the terms "lovely" or "love" in combination with "skin" as well as testimony from three individuals regarding their involvement in and recollection of the application

process of Lovely Skin's trademarks. Based upon this evidence, the district court concluded that Ishtar had met both its initial burden and ultimate burden of persuasion to show that Lovely Skin's trademarks lacked acquired distinctiveness at the time of their registrations.

In concluding that Ishtar had established a prima facie case that Lovely Skin's trademarks had not acquired distinctiveness at the time of their registrations, the district court specifically relied on three of the third-party registrations that Ishtar presented: (1) LOVE YOUR SKIN, a federally registered trademark registered to another Omaha dermatologist; (2) "Lovely Skin, Inc.," a business incorporated by a California aesthetician in 2003; and (3) "Lovely Nails & Skin Care," a business operating in 2003 in Pennsylvania. Evidence of third parties using marks similar to Lovely Skin's trademarks can demonstrate that the use of Lovely Skin's trademarks was not substantially exclusive and, thus, might demonstrate that Lovely Skin's trademarks had not acquired distinctiveness at the time of their registrations. However, "[t]he significance of third-party trademarks depends wholly upon their usage." *Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1173 (2d Cir. 1976). If these other marks were not used in a meaningful way, they do not demonstrate that the use of Lovely Skin's trademarks was not substantially exclusive or prevent Lovely Skin's trademarks from acquiring distinctiveness. *See id.*; *Curtis-Stephens-Embry Co.*, 199 F.2d at 414. Ishtar did not present any evidence regarding how these third parties had used the marks, if at all, in the five years before Lovely Skin's trademarks were registered. Nor did it offer evidence of how, or even if, the third parties promoted or advertised these marks during those years or whether the public recognized these third party marks. Therefore, evidence of three third parties that registered either trademarks or business names similar to Lovely Skin's trademarks cannot overcome the strong presumption of validity and establish a prima facie case that Lovely Skin's marks had not acquired distinctiveness at the time of their registrations through substantially exclusive use for the five preceding years. *See Curtis-Stephens-Embry Co.*, 199 F.2d at 414 (finding evidence of third party

trademarks registrations insufficient to support a finding of invalidity where the registrations "did not show, and there was no effort made to prove, where they had been used (other than at the place of business), whether they were in use after the dates of the registrations or had been discontinued, or how exclusive their use had been"); *see also L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1352 (Fed. Cir. 1999) (holding that "any" use by third parties does not preclude an applicant's use from being substantially exclusive); *Scarves by Vera, Inc*, 544 F.2d at 1173 (finding that evidence of third-party registrations was insufficient to weaken a trademark's acquired distinctiveness where "[d]efendant introduced no evidence that these trademarks were actually used by third parties, that they were well promoted or that they were recognized by consumers").

In determining that Ishtar had satisfied its initial burden, the district court also relied on the testimonies of attorneys Green and Carnaby and Dr. Schlessinger. However, with this evidence, Ishtar only established that: (1) Green did not perform and currently is unaware of any investigation performed by Carnaby into whether Lovely Skin's use of its trademarks had been substantially exclusive in the five years preceding the application; (2) Carnaby has no independent recollection of preparing the 2004 LOVELYSKIN application or of performing an investigation; and (3) Dr. Schlessinger presently has no evidence that Lovely Skin's use of its marks prior to their registrations was exclusive. To be sure, this evidence would not provide any support for Lovely Skin's claim of substantially exclusive use. However, because the PTO registered Lovely Skin's trademarks, the relevant inquiry is not whether Lovely Skin can make a showing that its marks had acquired distinctiveness at the time of their registrations. Rather, it is whether Ishtar has met its burden of establishing a prima facie case that Lovely Skin's trademarks lacked acquired distinctiveness at the time of their registrations. Isthar's testimonial evidence does not prove that Lovely Skin's marks had not acquired distinctiveness by the time they were registered. Instead, it demonstrates only that, six and eight years after the applications, Lovely Skin no longer has evidence of its trademarks' substantially exclusive use and that the

attorneys who prepared the applications have no recollection of any investigation into Lovely Skin's claim of substantially exclusive use at the time they applied for registration. This evidence is insufficient to overcome the strong presumption of validity of Lovely Skin's trademark registrations and establish a prima facie case of invalidity.

Nor can this evidence in combination with the third-party registrations be sufficient to demonstrate a prima facie showing of no acquired distinctiveness; this evidence is not of "any real substance" to whether Lovely Skin's marks had become associated in consumers' minds with a particular source prior to their registrations. *See Curtis-Stephens-Embry Co.*, 199 F.2d at 414. Therefore, it cannot overcome the strong presumption of validity that registration affords Lovely Skin's trademarks. Accordingly, Ishtar did not satisfy its initial burden to establish a prima facie case that Lovely Skin's trademarks had not acquired distinctiveness at the time of their registrations.

Even if we were to find that Ishtar presented sufficient evidence to satisfy its initial burden, this evidence did not satisfy Ishtar's ultimate burden of persuasion. In defense of its registrations, Lovely Skin presented evidence of its significant advertising expenditures and sales growth during the five years preceding the registration of its marks. Such evidence can demonstrate that a mark has acquired distinctiveness. *See Heartland Bank v. Heartland Home Fin., Inc.*, 335 F.3d 810, 819 (8th Cir. 2003) ("Circumstantial evidence is evidence from which consumer association might be inferred, such as years of use, extensive amount of sales and advertising, and any additional evidence showing wide exposure of the mark to consumers."); *Reader's Digest Ass'n, Inc. v. Conservative Digest, Inc.*, 821 F.2d 800, 805 (D.C. Cir. 1987) ("[T]o say that proof of extensive advertising and substantial sales may not be probative of secondary meaning is to defy both logic and common sense."), *abrogated on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994). On the other hand, Ishtar did not present any additional evidence, other than

that discussed above, to satisfy its ultimate burden to establish by a preponderance of the evidence that Lovely Skin's trademarks are invalid. As discussed above, this evidence was of no real substance to the ultimate question. Therefore, it cannot overcome the substantial burden of showing that Lovely Skin's trademarks had not acquired distinctiveness at the time of their registrations by a preponderance of the evidence and, thus, were not entitled to registration. *See Curtis-Stephens-Embry Co.*, 199 F.2d at 414.

Whether or not the district court applied the correct standard of "substantially exclusive use," we are confident that if it did, the district court's conclusion is clearly erroneous and that if it did not, the record permits only one permissible resolution of the fact question; that is, Ishtar did not demonstrate that Lovely Skin's trademarks were not registrable because they lacked acquired distinctiveness at the time of their registrations. Accordingly, we reverse the district court's judgment canceling the registrations of LOVELYSKIN and LOVELYSKIN.COM.

B.

Lovely Skin also argues that the district court erred in finding for Ishtar on Lovely Skin's claims of trademark infringement, false designation of origin, unfair competition, and deceptive trade practices. In order to succeed on each of these four claims, Lovely Skin was required to demonstrate, among other things, that a likelihood of confusion exists between Lovely Skin's trademarks and livelyskin.com. *See* 15 U.S.C. §§ 1114(1)(a) and 1125(a); *Sensient Technologies Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 763 n.3 (8th Cir. 2010); Neb. Rev. St. 87-302(a). The district court concluded, however, that no likelihood of confusion existed between Lovely Skin's trademarks and livelyskin.com.

After a bench trial, the district court's finding that no likelihood of confusion exists is a question of fact reviewed for clear error. *Kemp v. Bumble Bee Seafoods,*

*Inc.*, 398 F.3d 1049, 1053-54 (8th Cir. 2005). In determining whether a likelihood of confusion exists, the district court considered the following six factors from *SquirtCo v. Seven-Up Company*, 628 F.2d 1086, 1091 (8th Cir. 1980): "(1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to 'pass off' its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) the type of product, its costs and conditions of purchase." *Co-Rect Prods.*, 780 F.2d at 1330 (citing *SquirtCo*, 628 F.2d at 1091). "[T]he relative weight of the factors depends on the facts of the individual case." *First Nat. Bank in Sioux Falls v. First Nat. Bank, South Dakota*, 153 F.3d 885, 888 (8th Cir. 1998). To show a likelihood of confusion, Lovely Skin must show a probability of confusion, not merely a possibility. *See Jeld-Wen, Inc. v. Dalco Indus., Inc.*, 198 F.3d 250, at *4 (8th Cir. 1999).[4]

In its evaluation of the six *SquirtCo* factors, the district court first found that Lovely Skin's marks were both conceptually and commercially weak. Second, it found that LOVELYSKIN.COM and livelyskin.com were very similar in appearance but were not identical. Third, the district court found that the two businesses compete with each other in the high-end cosmetic sales industry. Fourth, the district court found that Ishtar did not intentionally seek to infringe on Lovely Skin's marks. Fifth, the district court found that there was scarce evidence of actual confusion, and that if actual confusion did exist, one would expect to see more evidence of it. And sixth, it found that customers would exercise a high degree of care in making purchases

---

[4]Whether a mark is federally registered does not bear on a mark's strength or affect the likelihood of confusion analysis. *M2 Software Inc. v. M2 Commc'ns, L.L.C.*, 76 F. App'x 123, 124 (9th Cir. 2003); *see generally Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 626 (8th Cir. 1987) ("[A] mark's registered status is only an evidentiary tool, and the fact of registration does not affect the plaintiff's ultimate burden of proof in an infringement action."). Therefore, even though the district court erroneously canceled Lovely Skin's trademark registrations, this error did not affect the district court's likelihood of confusion analysis.

-14-

because both parties operate in a niche market selling expensive products. Finally, after evaluating the six *SquirtCo* factors in light of the evidence presented, the district court found no likelihood of confusion between Lovely Skin's trademarks and Ishtar's website. On appeal, Lovely Skin argues that the district court's finding of no likelihood of confusion is clearly erroneous, specifically challenging the district court's findings with respect to the first, second, fifth, and sixth *SquirtCo* factors.

Lovely Skin first argues that the district court erred by finding that Lovely Skin's marks lacked commercial strength. Two relevant measurements of a mark's strength are its conceptual strength and its commercial strength. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011). Here, there is no dispute that Lovely Skin's marks are descriptive, and a descriptive mark conceptually is the "weakest protectable mark," *Cellular Sales, Inc. v. Mackay*, 942 F.2d 483, 486 (8th Cir. 1991). Thus, in order to demonstrate that its marks are strong, Lovely Skin had a heavy burden to show that its marks currently are commercially strong by having attained a strong secondary meaning. *See Telemed Corp. v. Tel-Med, Inc.*, 588 F.2d 213, 219 (7th Cir. 1978). Lovely Skin presented no direct evidence, such as consumer surveys or consumer testimony, to demonstrate that its marks enjoy strong secondary meaning. *See Frosty Treats, Inc.*, 426 F.3d at 1005 ("[D]irect evidence such as consumer testimony or surveys are most probative of secondary meaning."). Lovely Skin argues, however, that its increasing advertising expenditures and resulting sales growth demonstrate substantial commercial strength. The district court attributed Lovely Skin's revenue growth to the fame of the third-party products that it sells, rather than to the commercial strength of Lovely Skin's marks. Indeed, Lovely Skin's print and internet advertisements more prominently display the marks of the third-party products that Lovely Skin sells than Lovely Skin's own trademarks. Similarly, the national newspapers and magazine articles that Lovely Skin identified to demonstrate public recognition prominently display and feature third-party products. Thus, the district court's finding that Lovely Skin's trademarks lack a high

degree of commercial strength is a permissible view of the evidence, especially in light of the fact that Lovely Skin's marks are merely descriptive.

Lovely Skin next argues that the district court clearly erred by requiring that its mark and Ishtar's mark be identical in order for the second factor to support a finding of likelihood of confusion. However, the district court did not adopt such a requirement. Rather, the district court's reference to the lack of identity merely underscores that Lovely Skin's weak marks would be afforded more protection if they were identical to Ishtar's mark. The district court expressly considered the marks' "indisputable" similarities in its analysis, but it nevertheless found no likelihood of confusion existed between the marks after considering all of the *SquirtCo* factors. The district court refused to allow this one factor to be determinative and properly considered this factor in combination with the remaining *SquirtCo* factors. *See Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc.*, 815 F.2d 500, 504 (8th Cir. 1987) ("[N]o particular factors are determinative, [and] neither should excessive importance be placed on any one factor to the exclusion of others.").

Lovely Skin also argues that the district court clearly erred in concluding there was insufficient evidence of actual confusion. The only evidence admitted at trial of actual confusion was an exhibit in which a consumer addressed an email to cathy@livelyskin.com, rather than cathy@lovelyskin.com, and Dr. Schlessinger's unsubstantiated statement that since 2009 Lovely Skin was "seeing quite a bit of instances both orally and a couple written instances of confusion" between LovelySkin.com and Ishtar's website. Vardeh testified, however, that she had never experienced a single instance of confusion. The district court concluded that the email did not demonstrate actual confusion because the customer clearly knew that she was contacting Lovely Skin and merely made a typographical error. The exhibit supports the district court's conclusion; the customer was replying to a confirmation email that Lovely Skin sent her regarding her order and merely made an error in the email address of the person she was copying. Thus, the district court did not commit clear

error by finding that there was minimal evidence of actual confusion. *See Duluth News-Tribune, a Div. of Nw. Publ'ns, Inc. v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1098-99 (8th Cir. 1996) (holding that "even several isolated incidents of actual confusion" are insufficient to support a finding of likelihood of confusion).

Finally, Lovely Skin challenges the district court's determination that the degree of care that consumers will exercise in making their purchases reduces the likelihood of confusion. "[T]he kind of product, its costs and the conditions of purchase are important factors in considering whether the degree of care exercised by the purchaser can eliminate the likelihood of confusion which would otherwise exists." *SquirtCo*, 628 F.2d at 1091. The district court found that the niche cosmeceutical market in which Lovely Skin and Ishtar operate reduces the likelihood of confusion because consumers will exercise a high degree of care when making their purchases. While Lovely Skin sells some products for as little as $3, the average purchase from LovelySkin.com is approximately $100. Lovely Skin also sells some eye creams for $185, and its most expensive products sell for nearly $400. Moreover, Lovely Skin's own expert testified that the products offered by Lovely Skin were "high end" and "sophisticated" products. Driscoll further explained that the products that Lovely Skin sells are "prestige" products, rather than "mass" products, because of their price point, their efficacy, and their complex ingredients. Therefore, the district court's finding that consumers will exercise a greater degree of care in making purchases in this market, thereby reducing the likelihood of confusion, was a permissible view of the evidence.

The district court considered all of the *SquirtCo* factors and determined that no likelihood of confusion exists between Lovely Skin's trademarks and Ishtar's website. This determination was a permissible view of the evidence, and therefore, we cannot say the district court committed clear error. *See Schaub*, 638 F.3d at 915. Because all four counts of Lovely Skin's complaint require a finding of a likelihood

-17-

of confusion to succeed, we affirm the district court's judgment for Ishtar on all four counts.

## III.  Conclusion

For the aforementioned reasons, we reverse the district court's judgment canceling Lovely Skin's trademark registrations, and we affirm its judgment for Ishtar on Lovely Skin's claims.

_____