# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-3999

_____

ZW USA, Inc., a California Company

*Plaintiff - Appellant*

v.

PWD Systems, LLC, a Missouri Limited Liability Company

*Defendant - Appellee*

_____

No. 16-4035

_____

ZW USA, Inc., a California Company

*Plaintiff - Appellee*

v.

PWD Systems, LLC, a Missouri Limited Liability Company

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 14, 2017
Filed: April 26, 2018
_____

Before SMITH, Chief Judge, KELLY and ERICKSON, Circuit Judges.
_____

KELLY, Circuit Judge.

This case involves a trademark dispute between two companies that sell plastic bags for picking up and disposing of dog droppings. ZW USA, Inc. entered the dog-bag market first and registered the mark ONEPUL. PWD, LLC entered the market after ZW under the trade name BagSpot. On its website, PWD uses the phrase "one-pull" to describe some of its products. ZW sued PWD for infringement of its ONEPUL trademark, and PWD countersued claiming that the ONEPUL trademark is invalid. The district court granted summary judgment to PWD on the infringement claim, and to ZW on the validity claim. Both parties appealed.

## I.   Background

ZW and PWD sell plastic bags that customers use to pick up after their dogs. Both companies sell "wicket" bags (also called "header" bags). Like plastic grocery bags, wicket bags are sold stacked on top of one another and connected to some sort of header strip. Also like grocery bags, wicket bags are dispensed by tearing the bag off the header strip. Wicket bags are designed to be dispensed one at a time, with a single pull of the hand.

ZW, a California company, began selling bags first. ZW stands for "zero waste." At some point, ZW began using the marks "ONEPUL" and "SINGLPUL" with its wicket bags. These marks, of course, are misspelled truncations of the phrases "one-pull" and "single-pull." In 2013, ZW applied for trademarks for

ONEPUL and SINGLPUL, which the United States Patent and Trademark Office (PTO) granted in 2014. The PTO did not ask ZW for proof that the marks had acquired distinctiveness in the dog-bag marketplace. Since 2010, ZW has spent some $1.5 million on advertising for all of its products; it is unclear what portion of that sum was spent on advertising ONEPUL wicket bags.

PWD is a Missouri company that began selling wicket bags in 2012. It markets its products under the trade name BagSpot, and competes with ZW for customers. PWD's website identifies its wicket bags using the phrases "one-pull" and "one pull." As part of its marketing strategy, PWD purchased the term "zerowaste" from Google Adwords. As a result, when a person uses Google to search for "zerowaste," PWD's site appears near the top of the results page.

ZW filed suit alleging infringement of its ONEPUL and SINGLPUL trademarks. PWD countersued, claiming that both trademarks were invalid. At summary judgment, the district court determined that, while PWD had not infringed on ZW's marks, PWD had not presented evidence sufficient to overcome the strong presumption that ZW's registered marks were valid. It therefore granted PWD summary judgment on the infringement claim, and granted ZW summary judgment on the validity claim. On appeal, the parties raise the same issues that were before the district court. We address each in turn.

## II. Trademark Infringement

ZW contends that PWD's description of its wicket bags as "one-pull"[1] infringes on its ONEPUL trademark.[2]  We review this claim de novo.  Frosty Treats Inc. v. Sony Computer Entm't Am., Inc., 426 F.3d 1001, 1003 (8th Cir. 2005).

Trademarks are "any word, name, symbol, or device . . . used by a person . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others."  15 U.S.C. § 1127.  The owner of "a registered mark . . . has a civil action against anyone employing an imitation of it in commerce when 'such use is likely to cause confusion, or to cause mistake, or to deceive.'"  KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 117 (2004) (quoting 15 U.S.C. § 1114(1)(a)).  The plaintiff mark owner has the burden of "showing that the defendant's actual practice is likely to produce confusion *in the minds of consumers* about the origin of the goods or services in question."  Id. (emphasis added).

To determine the likelihood of confusion, we evaluate six factors:

---

[1]PWD argues that its use of the phrase "one-pull" was not a "use in commerce" that would subject it to suit for infringement.  See Sensient Techs. Corp. v. SensoryEffects Flavor Co., 613 F.3d 754, 760 (8th Cir. 2010).  We disagree.  A mark is "in use in commerce on goods when . . . it is placed in any manner on the goods . . . or the displays associated therewith . . . ."  15 U.S.C. § 1127.  PWD placed the phrase "one-pull" prominently on the webpage describing the products in question.  Customers can order the bags from the same webpage.  That is a use in commerce.

[2]In its complaint, ZW also claimed that PWD had infringed its SINGLPUL mark.  But PWD's website only uses the phrase "one-pull," ZW presented no evidence in the district court that PWD infringed its SINGLPUL mark, and ZW makes no argument regarding its SINGLPUL mark on appeal.  Accordingly, we affirm the district court's grant of summary judgment to PWD on the SINGLPUL infringement claim.  See Fed. R. App. P. 28(a)(8)(A).

(1) the strength of the owner's mark; (2) the similarity between the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to "pass off" its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) the type of product, its costs and conditions of purchase.

Co-Rect Prods., Inc. v. Marvy! Advert. Photography, Inc., 780 F.2d 1324, 1330 (8th Cir. 1985) (citing SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980)). "These factors do not operate in a mathematically precise formula; rather, we use them at the summary judgment stage as a guide to determine whether a reasonable jury could find a likelihood of confusion." Duluth News-Tribune v. Mesabi Publ'g Co., 84 F.3d 1093, 1096 (8th Cir. 1996). Accordingly, "[f]actual disputes regarding a single factor are insufficient to support the reversal of summary judgment unless they tilt the entire balance in favor of such a finding." Id. "When . . . a trademark dispute centers on the proper interpretation to be given to the facts, rather than on the facts themselves, summary disposition is appropriate." Id. at 1099.

We start by examining the strength of the ONEPUL mark. "A strong and distinctive" mark is "entitled to greater protection than a weak or commonplace one." SquirtCo, 628 F.2d at 1091. We have explained that "[t]wo relevant measurements of a mark's strength are its conceptual strength and its commercial strength." Lovely Skin, Inc. v. Ishtar Skin Care Prods., LLC, 745 F.3d 877, 888 (8th Cir. 2014). ONEPUL is conceptually weak. It is, after all, little more than a misspelling of "one-pull."[3] As to commercial strength, ZW submitted evidence that it had spent $1.5

_____

[3]ZW argues that the district court improperly ignored evidence that its ONEPUL mark is inherently distinctive because the PTO registered the mark without asking for a showing of secondary meaning. We have previously been skeptical of similar arguments. See Lovely Skin, 745 F.3d at 887 n.4. But even assuming that the PTO's manner of registering the ONEPUL mark is relevant, it does little to bolster ZW's argument for conceptual strength because ONEPUL is still just a misspelling

million on advertising since 2010.  This is circumstantial evidence of commercial strength, but says little about "minds of consumers," which is the relevant unit of analysis for likelihood of confusion.  KP Permanent Make-Up,  543 U.S. at 117.

On the similarity factor, we consider "the impression that each mark in its entirety is likely to have on a purchaser exercising the attention usually given by purchasers of such products." Duluth News-Tribune, 84 F.3d at 1097.  We find clear similarity between the ONEPUL mark and PWD's use of the phrase "one-pull."  But that does not end our analysis.  "[O]therwise similar marks are not likely to be confused when used in conjunction with [the] clearly displayed name of [the] manufacturer." Id. (citing Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981)).  That is the case here: PWD's "one-pull" bags are sold from a website that prominently displays its trade name, BagSpot.  ZW does not contest this.  Instead, ZW argues that the district court erred procedurally by requiring expert testimony—which ZW did not present— on similarity.  But that is not what the district court did.  The court merely explained that ZW *could* have offered expert evidence to bolster its claim that ONEPUL and "one-pull" are similar.

As to the degree of competition between ZW and PWD's wicket bags, we agree with the district court that ZW and PWD compete in the market for dog-waste disposal products, which renders confusion more likely.  But see Kemp v. Bumble Bee Seafoods, Inc., 398 F.3d 1049, 1056 (8th Cir. 2005) ("[D]irect competition is not the only aspect of this inquiry (although a showing of direct competition may increase the likelihood of confusion).").

_____

of the phrase "one-pull."  And even if it did support ZW's argument, this would not be enough to require reversal of summary judgment.  Duluth News-Tribune, 84 F.3d at 1096, 1099.

We next consider the extent to which the alleged infringer attempts to "pass off" its mark as that of the trademark owner. "While proof of bad intent is not required for success in an infringement or unfair competition claim, 'the absence of such intent is a factor to be considered.'" Sensient Techs., 613 F.3d at 766 (quoting Frosty Treats, 426 F.3d at 1008). We have explained that "[k]nowledge of another's product and an intent to compete with that product is not . . . equivalent to an intent . . . to mislead and to cause consumer confusion." Id. (quoting Luigino's, Inc. v. Stouffer Corp., 170 F.3d 827, 831 (8th Cir. 1999)). ZW cites two pieces of evidence to show intent. First, it says that PWD was aware of the details of ZW's business because PWD's founders are relatives of ZW's principals. That is evidence of knowledge only. Second, ZW cites PWD's purchase of the Google Adword "zerowaste" as evidence that PWD had bad intent. That might be relevant if we were analyzing a "zerowaste" trademark, but the issue in this case is the likelihood of confusion between ZW's ONEPUL mark and PWD's product description. Accordingly, ZW has introduced only minimal evidence that PWD intended to do anything but fairly compete with ZW in the dog-waste disposal industry.

On the "actual confusion" factor, we agree with the district court that ZW introduced no evidence that any consumer had ever actually confused ZW's ONEPUL mark with PWD's description of its "one-pull" bags.

Finally, we consider "the kind of product, its cost and the conditions of purchase" to determine "whether the degree of care exercised by the purchaser can eliminate the likelihood of confusion which would otherwise exist." SquirtCo, 628 F.2d at 1091 (quoting Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons, 523 F.2d 1331, 1342 (2d Cir. 1975)). To do so, we stand "in the shoes of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." Gen. Mills, Inc. v. Kellogg Co., 824 F.2d 622, 627 (8th Cir. 1987) (quotation omitted). The evidence on this factor is minimal—it consists only of the parties' websites and

online distribution methods.[4] Based on that evidence, it seems that an ordinary consumer exercises minimal care when purchasing a low-cost, fungible product like dog-waste disposal bags, even in bulk. See Kemp, 398 F.3d at 1055 ("There is always less likelihood of confusion where goods are expensive and purchased after careful consideration." (quoting Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1206 (1st Cir. 1983))). But the fact that the parties sell their respective products on different websites under different trade names cuts strongly against a likelihood of confusion. See Duluth News-Tribune, 84 F.3d at 1099 (affirming summary judgment where "distribution methods ensure[d] that the vast majority of ordinary purchasers [would] not be confused."). And ZW makes no argument to the contrary on appeal.

Taken as a whole, the evidence that ZW submitted at summary judgment showed only that ZW and PWD were in competition with one another. And while direct competition can increase the likelihood of confusion, see Kemp, 398 F.3d at 1056, ZW presented no evidence from which a jury could infer that consumers are likely to confuse ZW's ONEPUL wicket bags with PWD's BagSpot "one-pull" wicket bags. Accordingly, we affirm the district court's grant of summary judgment to PWD on the infringement claim.

### III.    Trademark Validity

We turn now to PWD's counterclaim that ZW's marks are invalid. Before addressing the merits, we must determine the scope of PWD's argument. Two of

---

[4]ZW takes issue with the district court's admission of Exhibit G, which consisted of print-outs of the websites of third-party dog-bag retailers. ZW objects that the exhibit is unauthenticated hearsay. But ZW's argument has no bearing on its infringement claim. The district court based its determination of non-infringement on the websites of ZW and PWD, not third-party websites. The admissibility of Exhibit G is relevant only to the *validity* of ZW's ONEPUL mark.

ZW's registered marks were before the district court: SINGLPUL and ONEPUL. The district court did not pass on the validity of the SINGLPUL mark and, on appeal, PWD makes no affirmative argument as to that mark's validity. Accordingly, we consider the argument waived and express no opinion on the validity of ZW's SINGLPUL mark.

The district court determined that the ONEPUL mark was entitled to a strong presumption of validity. The court then concluded that PWD had not presented enough evidence to overcome that presumption, and granted summary judgment to ZW. We review summary judgment de novo, and apply the same standards as the district court. Frosty Treats, 426 F.3d at 1003.

In order to receive protection under the Lanham Act, a mark must be distinctive—that is, it must uniquely identify a particular brand. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992). The PTO organizes marks using categories of ascending distinctiveness: "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful." Id. Suggestive, arbitrary, and fanciful marks are inherently distinctive, and thus eligible for registry. See id. By definition, generic and descriptive marks lack the requisite distinctiveness. Id. at 768–69. A generic mark "refe[rs] to the genus of which the particular product is a species." Id. at 768. In other words, a generic mark "denotes the product rather than any of the brands of the product." Door Systems, Inc. v. Pro-Line Door Systems, Inc., 83 F.3d 169, 171 (7th Cir. 1996). A descriptive mark "conveys an 'immediate idea of the ingredients, qualities or characteristics of the goods.'" Frosty Treats, 426 F.3d at 1005 (quoting Stuart Hall Co. v. Ampad Corp., 51 F.3d 780, 785–86 (8th Cir. 1995)). Descriptive marks may only be placed on the Principal Register "if shown to have acquired a secondary meaning." Id.

The Lanham Act protects both registered and unregistered trademarks. See Matal v. Tam, 137 S. Ct. 1744, 1752 (2017) ("[E]ven if a trademark is not federally

registered, it may still be enforceable under § 43(a) of the Lanham Act, which creates a federal cause of action for trademark infringement."). In a trademark suit, whether a mark is registered is important because it determines which party bears the burden of persuasion. If the mark is not registered, the mark user bears the burden of showing that the mark is protected by the Lanham Act. Zobmondo Entm't, LLC v. Falls Media, LLC, 602 F.3d 1108, 1113 (9th Cir. 2010); Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co., 550 F.3d 465, 474 (5th Cir. 2008) ("To prevail on their trademark infringement claim, the plaintiffs . . . must establish ownership in a legally [protectable] mark, and . . . they must show infringement by demonstrating a likelihood of confusion."). But if a mark is listed on the PTO's Principal Register, the party challenging the mark's validity bears the burden of showing the mark is not protected by the Lanham Act. Lovely Skin, 745 F.3d at 883.[5] In this case, ZW's ONEPUL mark was listed on the Principal Register, so PWD bore the burden of showing it was not valid.

The Lanham Act also provides that owners of registered marks may use the registration as evidence of the mark's validity. 15 U.S.C. § 1115(a). The content of that evidence depends on how the PTO registered the mark.[6] We have explained that, when the PTO registers a mark without asking the registrant to show the mark has acquired secondary meaning, the registration is evidence that the mark is inherently distinctive (i.e., suggestive, arbitrary, or fanciful). See Aromatique, Inc. v. Gold Seal, Inc., 28 F.3d 863, 869 (8th Cir. 1994). In this case, it is undisputed that the PTO registered ONEPUL without requiring ZW to show that it had acquired secondary

---

[5]In this latter type of case—where the PTO has listed the mark on the Principal Register—the placement of the burden on the challenging party is sometimes called the "presumption of validity." See Lovely Skin, 745 F.3d at 882–83.

[6]The content of the evidence provided by a mark's registration is also sometimes called the "presumption of validity." See Lovely Skin, 745 F.3d at 883.

-10-

meaning. Accordingly, ZW's registration certificate is evidence that the ONEPUL mark is inherently distinctive.

The Lanham Act tells us what a mark's registration means, but the ordinary rules of civil procedure tell us what to do with that information. At summary judgment, the evidence is viewed in the light most favorable to the nonmoving party (here, mark owner ZW), and summary judgment is withheld if there are genuine disputes of material fact. Fed. R. Civ. P. 56(a). The court considers the whole record, and refrains from weighing the evidence or making credibility determinations. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

In this case, PWD submitted evidence to show that ONEPUL was either generic or descriptive without secondary meaning. On genericness, PWD submitted printouts from several websites where competitors use the phrases "one pull" or "one-pull" to describe their dog bags,[7] which PWD contends establishes that "one-pull" is just a type of dog bag. On descriptiveness, PWD submitted ZW's product descriptions to show that ONEPUL is a variant of the phrase "one-pull," which PWD argues immediately conveys the manner in which ZW's bags are dispensed: with one pull of the hand. ZW replied with its certificate of registration, and argued that the PTO found ONEPUL to be inherently distinctive.

---

[7]ZW argues that this evidence should not have been considered by the district court because it is both hearsay and unauthenticated. We disagree. The printed webpages are not hearsay because they are not offered to prove the truth of the matter asserted. See Fed. R. Evid. 801(c)(2). That is, they are not offered to prove the fact that ZW's competitors' bags can actually be dispensed with one pull. They are offered to show the fact that certain of ZW's competitors use the phrase "one-pull" to describe their products. Moreover, there is nothing in the Rules of Evidence that would prevent PWD from authenticating the webpages at trial. See Fed. R. Civ. P. 56(c)(2).

Viewing the record as a whole, there is a fact dispute as to whether the ONEPUL mark is generic or descriptive. On this record, the only way to grant ZW summary judgment on PWD's validity claims was to decide that ZW's evidence was stronger or more credible than PWD's evidence. Such a determination is improper at summary judgment, and must be left to the trier of fact. We must therefore reverse the district court's grant of summary judgment to ZW on the validity claims.[8]

## IV. Conclusion

For the foregoing reasons, we affirm the district court's judgment on infringement, and reverse on validity. The case is remanded for proceedings consistent with this opinion.

_____

---

[8]The parties also dispute whether ONEPUL has acquired secondary meaning in the relevant marketplace. The district court did not address this question, and we likewise decline to do so.