# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-2115

_____

Phyllis Schlafly Revocable Trust, a Missouri trust by its trustee, John Schlafly;
Eagle Trust Fund, an unincorporated not-for-profit association by its sole
members, Bruce Schlafly and John Schlafly

*Plaintiffs - Appellants*

Eagle Forum Education and Legal Defense Fund, an Illinois not-for-profit corporation

*Plaintiff*

v.

Anne Cori, a Missouri resident; Eunice Smith, a Alabama resident; Cathie Adams,
a Texas resident; Carolyn McLarty, a Oklahoma resident; Rosina Kovar, a
Colorado resident; Shirley Curry, a Tennessee resident; Jane or John Doe, #1,
residents of the several states, wherever situated; Eagle Forum, an Illinois
not-for-profit corporation

*Defendants - Appellees*

_____

No. 17-3761

_____

Phyllis Schlafly Revocable Trust, a Missouri trust by its trustee, John Schlafly;
Eagle Trust Fund, an unincorporated not-for-profit association by its sole
members, Bruce Schlafly and John Schlafly; Eagle Forum Education and Legal
Defense Fund, an Illinois not-for-profit corporation

*Plaintiffs - Appellants*

v.

Anne Cori, a Missouri resident; Eunice Smith, a Alabama resident; Cathie Adams, a Texas resident; Carolyn McLarty, a Oklahoma resident; Rosina Kovar, a Colorado resident; Shirley Curry, a Tennessee resident; Jane or John Doe #1, residents of the several states, wherever situated; Jane or John Doe #2, residents of the several states, wherever situated; Jane or John Doe #3, residents of the several states, wherever situated; Jane or John Doe #4, residents of the several states, wherever situated; Jane or John Doe #5, residents of the several states, wherever situated; Eagle Forum, an Illinois not-for-profit corporation

*Defendants - Appellees*

_____

Appeals from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 15, 2019
Filed: May 22, 2019

_____

Before BENTON, MELLOY, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

In this consolidated appeal, the Phyllis Schlafly Revocable Trust (PSRT), Eagle Trust Fund (ETF), and Eagle Forum Education and Legal Defense Fund (EFELDF) (collectively, the trusts) appeal from the district court's[1] denial of preliminary injunctive relief and its sua sponte order staying litigation. Having jurisdiction over the denial of preliminary injunctive relief under 28 U.S.C. § 1292(a)(1), we affirm. We dismiss the appeal of the order staying litigation for lack of appellate jurisdiction.

_____

[1]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

-2-

I

Conservative activist Phyllis Schlafly founded several nonprofit entities and associated trusts during her lifetime, including the four entities involved in this case: Eagle Forum and the trusts: PSRT, ETF, and EFELDF. Several of Phyllis Schlafly's adult children have held leadership positions in the nonprofits for some time.

In the spring of 2016, a rift developed among the siblings. On one side stood Phyllis Schlafly's youngest daughter, Anne Cori, backed by five of her fellow Eagle Forum board members: Eunice Smith, Cathie Adams, Carolyn McLarty, Rosina Kovar, and Shirley Curry. Together, these six members have become known as the "gang of six." On the other side stood Phyllis Schlafly's eldest son, John Schlafly, who supported the then-president of Eagle Forum, Ed Martin. On April 11, 2016, the gang of six voted, over John Schlafly's objection, to remove Martin from his position as president of Eagle Forum and to appoint Smith as acting president and Cori as executive director.

Two weeks later, on April 22, Phyllis Schlafly amended certain trust documents to remove Cori as a trustee of the PSRT. (The other trustee, John Schlafly, remained.) The same day, the gang of six filed suit against Martin, John Schlafly, and Eagle Forum in Madison County, Illinois, alleging that Martin continued to hold himself out as the president of Eagle Forum and that he and John Schlafly were blocking the gang of six from accessing the Eagle Forum headquarters and its property, including bank accounts, membership lists, and intellectual property. The Madison County court issued a temporary restraining order (TRO) enjoining John Schlafly and Martin from preventing the gang of six from accessing Eagle Forum's headquarters and property.

On May 26, Phyllis Schlafly amended the trust documents for the PSRT again, this time providing that prior to distribution of the trust proceeds amongst the

siblings, Cori's share would be reduced by the litigation costs incurred by the defendants in the Madison County lawsuit and "in defense of any related lawsuit that may hereafter be brought during [Phyllis Schlafly's lifetime] relating to the same subject matter." She amended the trust documents a third time on August 31, providing that upon her death, the right to license all of her "copyrights, moral rights, intellectual property rights, and trademark rights," including "her name, persona, and likeness" and the "intangible literary property rights" associated with Eagle Forum and her other entities, would be "given to the Trustees of the Phyllis Schlafly Royalty Trust II." Phyllis Schlafly died six days later, on September 5.

Meanwhile, other litigation began. That same August, the gang of six filed suit in the Southern District of Illinois against Phyllis Schlafly's American Eagles—another entity headed by John Schlafly and Martin—claiming infringement of Eagle Forum's intellectual property. In October, the trusts filed the lawsuit underlying these consolidated appeals in the Eastern District of Missouri, claiming infringement of Phyllis Schlafly's intellectual property—which the PSRT claimed interest in pursuant to the August 31 amendment—by the gang of six.

One day later, the Madison County court found that John Schlafly and Martin had violated the TRO and therefore modified it to suspend their positions within Eagle Forum and allow the gang of six to "assume temporary sole control and possession over all Eagle Forum property," including some of the intellectual property at issue in the Eastern District of Missouri suit.

In November, the trusts filed a motion in the Eastern District of Missouri for a TRO and preliminary injunction enjoining the gang of six from using Phyllis Schlafly's intellectual property. In response, the gang of six argued that at least some of the intellectual property was owned by Eagle Forum and therefore was subject to the Madison County TRO. The Eastern District of Missouri denied the motion. On March 17, 2017, the trusts filed a second motion for a TRO and preliminary

injunction, this time seeking to enjoin the gang of six from using the Eagle Logo mark and Phyllis Schlafly's name, likeness, and image. In support of their motion, they submitted Phyllis Schlafly's August 31 amendment to the PSRT, which they argued proved that the PSRT owned the intellectual property at issue in their motion,[2] and affidavits stating that Phyllis Schlafly was of sound mind when she executed the August 31 amendment.

Three days later, Cori filed a petition in the St. Louis County probate court. She sought to set aside the May 26 and August 31 amendments to the PSRT, claiming that Phyllis Schlafly lacked testamentary capacity and was subject to undue influence when she executed the amendments.

On April 17, the Eastern District of Missouri denied the trusts' second motion for a TRO and preliminary injunction, concluding that the trusts had not established a likelihood of success on the merits, a threat of irreparable harm absent preliminary injunctive relief, or that the public interest would be served by preliminary injunctive relief. The court also ordered the parties to show cause why the proceedings in the case should not be stayed pending resolution of the Madison County lawsuit and the St. Louis County probate matter.

On November 15, after receiving the parties' responses, the court administratively closed the case, explaining that "the claims made and remedies sought in the Madison County lawsuit are substantially similar to those made and sought here," that both lawsuits "put the same property at issue and involve the same parties," and that rulings in the St. Louis County probate matter and the Southern District of Illinois lawsuit "may impact the property at issue in this case." It ordered

---

[2]We note that the August 31 amendment would appear to transfer the intellectual property not to the PSRT but to the Royalty Trust II, which is not a party to this lawsuit. But neither side addresses this issue, and it does not prove dispositive to this appeal, so we will not concern ourselves with it.

the parties to submit status reports every six months and within 10 days of any final judgment or ruling on a dispositive motion in the related cases.

## II

The trusts appeal the Eastern District of Missouri's denial of preliminary injunctive relief. They also appeal that court's stay of litigation.

## A

We review the denial of a preliminary injunction for abuse of discretion. Barrett v. Claycomb, 705 F.3d 315, 320 (8th Cir. 2013). A district court abuses its discretion if it "rests its conclusion on clearly erroneous factual findings or erroneous legal conclusions." Id. (quoting Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 733 (8th Cir. 2008) (en banc)). When determining whether to grant preliminary injunctive relief, district courts must consider the four Dataphase factors: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Id. (quoting Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009). "[F]ailure to demonstrate irreparable harm is a sufficient ground to deny a preliminary injunction." Id. at 320.

Here, the district court explained that preliminary injunctive relief was not warranted because, among other things, the trusts had "not shown that a monetary award would be inadequate to remedy any harm caused by [the gang of six's] continued infringement upon, dilution of, or impermissible use of their intellectual

property." The trusts' sole argument to the contrary is that they are entitled to a presumption of irreparable harm because they have shown a likelihood of success on their trademark infringement claim. See Gen. Mills, Inc. v. Kellogg Co., 824 F.2d 622, 625 (8th Cir. 1987) ("Since a trademark represents intangible assets such as reputation and goodwill, a showing of irreparable injury can be satisfied if it appears that [the movant] can demonstrate a likelihood of consumer confusion.").

It is unclear whether the traditional presumption of irreparable harm in trademark cases has survived more recent Supreme Court opinions emphasizing the movant's burden to show that "irreparable injury is *likely* in the absence of an injunction." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008); eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391–94 (2006) (rejecting a "general rule that courts will issue permanent injunctions against patent infringement absent exceptional circumstances").[3] But regardless, the trusts would not be entitled to such a presumption, because they did not promptly seek preliminary injunctive relief concerning the alleged trademark infringement.[4] See Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 603 (8th Cir. 1999) (citing Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995), for the proposition that "delay in moving for preliminary injunctive relief negates any presumption of irreparable harm based on consumer confusion and may, standing alone, justify denial of

---

[3]Two of our sister circuits have abandoned the traditional presumption in trademark cases in light of Winter and eBay. See Ferring Pharm., Inc. v. Watson Pharm., Inc., 765 F.3d 205, 216 (3d Cir. 2014); Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc., 736 F.3d 1239, 1249 (9th Cir. 2013); see also N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1228–29 (11th Cir. 2008) ("[A] strong case can be made that *eBay*'s holding necessarily extends to the grant of preliminary injunctions under the Lanham Act.").

[4]The trusts filed their complaint alleging infringement of the Eagle Logo mark in October 2016. They did not seek preliminary injunctive relief concerning the Eagle Logo mark until March 2017.

preliminary injunctive relief"); see also Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 895 (8th Cir. 2013) (explaining that the movant's "failure to seek injunctive relief for a period of seventeen months . . . 'vitiates much of the force of [the movant's] allegations of irreparable harm'" (quoting Beame v. Friends of the Earth, 434 U.S. 1310, 1313 (1977))).

Thus, we affirm the district court's denial of preliminary injunctive relief.

B

The trusts invoke this court's appellate jurisdiction under 28 U.S.C. § 1291 for purposes of appealing the district court's order staying litigation pending resolution of related proceedings. But we have jurisdiction to consider a district court's decision to stay litigation under § 1291 only if the stay is "tantamount to a dismissal and effectively ends the litigation." Cottrell v. Duke, 737 F.3d 1238, 1241 (8th Cir. 2013) (cleaned up). To determine a stay's finality, we consider

> (1) whether the concurrent proceedings involve similar litigants; (2) whether the concurrent proceedings involve similar claims and issues; (3) whether the concurrent proceeding's judgment would have res judicata effect in federal court; and (4) whether the district court's order contemplated further district court involvement in the proceeding.

Id. at 1242. The purpose of this inquiry is to determine whether "the object of the stay is to require all or an essential part of the federal suit to be litigated in [another] forum" or "to surrender jurisdiction of a federal suit to [another] court," Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 10 n.11 (1983), in which case the stay effectively ends the litigation and is immediately appealable, or whether "[t]he stay order contemplates conducting future proceedings after the" other litigation has concluded, in which case the stay does not end the litigation and is not immediately appealable, Kreditverein der Bank Austria Creditanstalt fur

-8-

<u>Niederosterreich und Bergenland v. Nejezchleba</u>, 477 F.3d 942, 946, 947 (8th Cir. 2007) (cleaned up). The district court's method of analysis is not dispositive; "finality is determined by looking at the substance of what the district court intended." <u>Id.</u> at 946.

Here, the district court's stay does not effectively end the litigation. The district court characterized the stay as "temporary" in its order, and it required the parties to submit status reports every six months and within 10 days of any final judgment or ruling on a dispositive motion in the related cases, indicating that it contemplates further proceedings after the resolution of the related cases.

A consideration of the second and third <u>Cottrell</u> factors underscores the temporary nature of the stay. The district court did not state that the claims in the related cases were exactly the same, as would generally be required for claim preclusion. Rather, the district court focused on the similarity of issues in the related cases:

> Specifically, the issue of who is entitled to control of the Eagle Forum is at the core of the Madison County case, and is directly addressed in the Madison County TRO. Moreover, it appears to the Court that the St. Louis Probate case squarely presents—in an arguably more appropriate judicial forum—the issue of whether the May 26 and August 31 Amendments were effective to transfer to the Trust ownership of Phyllis Schlafly's personal intellectual property or to otherwise alter the terms of the Trust.

Thus, it appears that the district court stayed litigation to allow the related cases to resolve several important issues in the case, allowing for simplified litigation upon lifting of the stay. It does not appear that the court intended to "surrender jurisdiction" to another forum, nor did its order have that effect. <u>Cf.</u> <u>Kreditverein</u>, 477 F.3d at 946 (concluding that a stay would not effectively end the litigation because the outcome of the related litigation would "affect only a small portion of the

district court proceedings"). As a result, this court lacks jurisdiction to review the stay.

The trusts also invoke the collateral order doctrine as an alternative ground for appellate jurisdiction. But a stay qualifies for immediate appeal under the collateral order doctrine only when it amounts "to a refusal to adjudicate the merits." Id. at 948. When the stay merely "delay[s] the proceedings," the collateral order doctrine does not allow for appellate jurisdiction. Id. Such is the case here.

As a result, we dismiss the trusts' appeal of the order staying litigation for lack of appellate jurisdiction.

_____