# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3436
_____

Jeanne Anderson

*Plaintiff - Appellant*

v.

Rugged Races, LLC; Dennis Raedeke, Inc., doing
business as Wild Mountain Recreation Area

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: February 16, 2022
Filed: August 2, 2022

_____

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

In September 2016, Jeanne Anderson shattered her heel bone participating in the Rugged Maniac Twin Cities 5k obstacle race at the Wild Mountain Recreation Area ("Wild Mountain"). In 2018, Anderson sued Rugged Races LLC ("Rugged Races"), the race promoter, and Dennis Raedeke, Inc., the owner of Wild Mountain, alleging that defendants were "grossly negligent" in failing to perform their duties to

protect race participants from unreasonable risks of harm. She appeals the district court's[1] grant of summary judgment in favor of both defendants. The diversity action is governed by Minnesota state law. Reviewing the grant of summary judgment *de novo*, we affirm. See Kraft v. Ingersoll-Rand Co., 136 F.3d 584, 585-86 (8th Cir. 1998) (standard of review).

## I. Background

Since 2010, Rugged Races has planned hundreds of obstacle races around the country, including Rugged Maniac Twin Cities. The events feature an obstacle course with a series of challenges involving barbed wire, fire, water, and mud, followed by a post-race party. When Anderson registered for the 2016 Twin Cities event, she signed a Race Participant Agreement (the Agreement). In Part III of the Agreement, titled **Assumption of Inherent Risks**, Anderson acknowledged:

> I understand fully the inherent risks involved in the Event and assert that I am willingly and voluntarily participating in the Event. . . . (1) I understand the nature of the Event; (2) I understand the physical and mental demands that this activity will place upon me; and (3) I understand that I may be injured by participating in the Event. I hereby assert that I knowingly assume all of the inherent risks of the activity and take full responsibility for any and all damages, liabilities, losses or expenses that I incur as a result of participating in the Event.

In Part IV, titled **Waiver of Liability for Ordinary Negligence**, Anderson waived and discharged both Rugged Races and Wild Mountain "from any and all claims resulting from the INHERENT RISKS of the Event or the ORDINARY NEGLIGENCE of Rugged Races LLC (or other Released Parties)." Anderson again signed the Agreement when she checked in on race day.

---

[1]The Honorable Patrick J. Schiltz, now Chief Judge of the United States District Court for the District of Minnesota

After starting the race and completing the first seven obstacles, Anderson reached the "Bang the Gong" challenge. This obstacle required her to jump from a raised platform, attempt to slap a gong in midair, and land in a pit of muddy water. When Anderson landed in the pit her "left foot hit something hard." She crawled from the pit, received medical attention, and learned she had shattered the calcaneus bone in her left heel. Of the more than 4000 participants in the 2016 race, four others were injured on the Bang the Gong obstacle, suffering injuries to their foot or ankle after landing in the pit.

Anderson's Complaint alleged (i) that defendants had duties to design and construct a reasonably safe course, maintain the course in a safe condition, inspect the course for unreasonable risks of harm, warn race participants of unreasonable risks, supervise parties responsible for performing those duties, and operate and maintain the course to ensure participants were not exposed to unreasonable risks; and (ii) that defendants were grossly negligent in failing to perform each of these duties. After discovery, defendants moved for summary judgment. The summary judgment record includes deposition testimony from Anderson and Rugged Races employees, declarations from the other injured participants, reports by Anderson's expert witnesses, and other documentary evidence.

The district court granted summary judgment in favor of both defendants. Anderson v. Rugged Races LLC, 496 F. Supp. 3d 1270 (D. Minn. 2020). The court concluded that the exculpatory clause in the Agreement barred any claims for ordinary negligence and that Anderson had failed to show "greater-than-ordinary negligence." On appeal, Anderson argues (i) the exculpatory clause is unenforceable; (ii) if enforceable, it does not waive claims based on defendants' alleged greater-than-ordinary negligence; and (iii) the summary judgment record includes evidence from which a reasonable jury could find greater-than-ordinary negligence. Defendants argue the district court properly granted summary judgment because there is insufficient evidence of greater-than-ordinary negligence. They further argue that

Minnesota law does not recognize any claim other than the claims for ordinary negligence that Anderson waived in the Agreement.[2]

We will affirm the grant of summary judgment when the evidence viewed in the light most favorable to the nonmoving party presents "no genuine issue of material fact" from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis omitted); see Fed. R. Civ. P. 56(a). "A mere scintilla of evidence is insufficient to defeat summary judgment and if a nonmoving party who has the burden of persuasion at trial does not present sufficient evidence as to any element of the cause of action, then summary judgment is appropriate." Brunsting v. Lutsen Mountains Corp., 601 F.3d 813, 820 (8th Cir. 2010) (quotations and citations omitted).

## II. Analysis

On appeal, Anderson argues that her waiver of ordinary negligence claims in the Agreement is not enforceable and, alternatively, that it does not waive claims based on greater-than-ordinary negligence. Defendants counter that the exculpatory clause is valid and enforceable and bars *all* of Anderson's claims. There is a considerable body of relevant Minnesota case law on these issues.

A. Under Minnesota law, there is no common law action for "gross negligence." See Peet v. Roth Hotel Co., 253 N.W. 546, 548 (Minn. 1934). However, the negligence standard governing particular claims may be varied by statute or by contract. See, e.g., State v. Bolsinger, 21 N.W.2d 480 (Minn. 1946) (criminal negligence statute), overruled on other grounds, State v. Engle, 743 N.W.2d

_____

[2]Defendants also argue (i) Anderson waived any claim based on greater-than-ordinary negligence by alleging only gross negligence in her Complaint; and (ii) Anderson's claims are barred by the Minnesota doctrine of primary assumption of the risk. Given our resolution of Anderson's appeal, we need not consider these issues.

-4-

592 (Minn. 2008). Under Minnesota law, as in most States, "ordinary negligence" is the "failure to exercise such care as persons of ordinary prudence usually exercise under such circumstances." Domagala v. Rolland, 805 N.W.2d 14, 22 (Minn. 2011) (quotation omitted). Gross negligence is "substantially and appreciably higher in magnitude than ordinary negligence . . . [and is] the absence of slight diligence, or the want of even scant care." Bolsinger, 21 N.W.2d at 485.

In the Race Participant Agreement, Anderson waived all claims resulting from "the INHERENT RISKS of the Event or the ORDINARY NEGLIGENCE" of the defendants. Minnesota Courts call provisions of this type exculpatory clauses. In Schlobohm v. Spa Petite, Inc., 326 N.W.2d 920 (Minn. 1982), the Supreme Court of Minnesota dismissed a fitness spa member's negligence action, based on the exculpatory clause in her membership agreement. The Court noted that prior cases had upheld exculpatory clauses in construction contracts and commercial leases:

> Even though we have recognized the validity of exculpatory clauses in certain circumstances, they are not favored in the law. A clause exonerating a party from liability will be strictly construed against the benefited party. *If the clause is either ambiguous in scope or purports to release the benefited party from liability for intentional, willful or wanton acts, it will not be enforced.*

Id. at 923 (emphasis added, citation omitted). Reversing the denial of summary judgment, the Court held:

> that the exculpatory clause in Spa Petite's membership contract was unambiguous and limited to exoneration from negligence; that there was not disparity of bargaining power; and that the clause was not void as against public policy.

Id. at 926.

-5-

In Beehner v. Cragun Corp., 636 N.W.2d 821 (Minn. Ct. App. 2001), the Minnesota Court of Appeals considered a riding stable's exculpatory clause. Unlike the exculpatory clause in Schlobohm, which applied to "all acts of active or passive negligence," 326 N.W.2d at 922, the clause in Beehner was limited to claims of "ordinary negligence" and expressly excluded claims based on "gross negligence and willful and wanton misconduct." 636 N.W.2d at 825. Reversing the grant of summary judgment in favor of the riding stable, the Court held:

> In a dispute over the applicability of an exculpatory clause, summary judgment is appropriate only when it is uncontested that the party benefited by the exculpatory clause has committed no *greater-than-ordinary negligence.* Thus, summary judgment is appropriate here only if Outback's conduct does not, as a matter of law, rise to the level of *gross negligence or wanton and willful misconduct.*

Id. at 829 (emphasis added and citation omitted).

The district court treated Beehner as controlling Minnesota authority and applied the greater-than-ordinary negligence standard. Defendants argue Minnesota law does not recognize any claim other than the claims for ordinary negligence. We need not resolve that question in this case because, in granting summary judgment in favor of defendants, the district court adopted the view of this issue that is most favorable to Anderson, the non-moving party. Because we agree with the court that Anderson presented insufficient evidence of greater-than-ordinary negligence, we assume without deciding that this standard is consistent with controlling Minnesota law.

In addition to arguing that greater-than-ordinary negligence is the correct standard, Anderson argues that the exculpatory clause at issue is unenforceable because it is ambiguous in scope: Minnesota law imposes on defendants as the landowner and operator of a for-profit recreational activity a duty to exercise a "high

degree of care" to ensure that invitees are not exposed to unreasonable risks of harm. Hanson v. Christensen, 145 N.W.2d 868, 873-74 (Minn. 1966); see Olmanson v. LeSueur Cty., 693 N.W.2d 876, 881 (Minn. 2005); Isler v. Burman, 232 N.W.2d 818, 821 (Minn. 1975). This argument is without merit. First, the "ordinary negligence" clause in the Agreement is less, or at least no more ambiguous than the exculpatory clause held to be *un*ambiguous in Schlobohm, 326 N.W.2d at 922-23 (the term "all acts of active or passive negligence . . . specifically purports to exonerate Spa Petite from liability for acts of negligence and negligence only"), and Beehner, 636 N.W.2d at 827. Second, when the duty to exercise this high degree of care applies, it is an ordinary negligence duty to exercise "reasonable care, meaning care commensurate with the risks involved." Hanson, 145 N.W.2d at 873. Thus, that the waiver of claims for "ordinary negligence" includes this type of duty for landowners and for-profit operators does not make the waiver ambiguous. We agree with the district court that the Agreement's exculpatory clause is unambiguously limited to ordinary negligence. As in Beehner, Anderson was a voluntary participant in a recreational activity that does not "implicate[] a public or essential service." 636 N.W.2d at 828.

B. Anderson claims defendants exhibited greater-than-ordinary negligence in the design, construction, supervision, and maintenance of the Bang the Gong obstacle. The district court properly rejected these claims.

On appeal Anderson first argues there was greater-than-ordinary negligence in the design of the Bang the Gong challenge based on expert testimony supporting her claim that a deeper level of water in the landing pit could have prevented her injury. However, Bang the Gong was not a new obstacle for the 2016 Rugged Maniac race. Rather it was tested, used in multiple previous events, and modeled on an earlier obstacle that was safely used for years. We agree with the district court that "[t]he fact that thousands of participants -- many of whom undoubtedly outweighed Anderson -- jumped into the landing pit without incident is compelling evidence that the water level was not unreasonably low." Anderson, 496 F. Supp. 3d at 1285.

Anderson also argues the summary judgment record supports her claim of greater-than-ordinary negligence in the construction process for the 2016 event. Like the district court, we disagree. Rugged Races followed a detailed protocol when constructing Bang the Gong for this and other events, described in deposition testimony by Rugged Races' Senior Vice President, Bradford Scudder, and a construction crew member from the 2016 race, Christian Melnik. The process involved digging a pit, removing debris, lining the pit with a tarp, filling it with water, and then constructing the platform participants would use to jump into the pit. The protocol requires crew members to inspect the pit three separate times before it is filled to ensure no rocks, roots, or other debris are present. They conduct two subsequent visual inspections after the pit is filled, including on the morning of the race. Although there was no supporting documentation, Melnik testified that he was not aware that the construction crew ever deviated from this protocol before, during, or after the 2016 race. Anderson, 496 F. Supp. 3d at 1274. The district court properly concluded that such evidence would be admissible as evidence of Rugged Races' routine. See Fed. R. Evid. 406 (court may admit evidence of routine practice "regardless of whether it is corroborated or whether there was an eyewitness").

Anderson concedes the admissibility of the Rule 406 evidence, but argues such "self-serving assertion[s]" are not dispositive. True enough. But this testimony by persons familiar with and involved in the process was strong evidence that Rugged Races complied with its established routine of carefully constructing and inspecting the obstacle before the race. Anderson's disputed evidence of a submerged rock[3] was insufficient to create a material issue of fact that would meet her burden to prove that defendants were liable for greater-than-ordinary negligence. Anderson, 496 F. Supp.

---

[3]Though there was no physical evidence of a submerged rock in the landing pit, Anderson and the other injured participants described "feeling a rock or similar object" when they landed. In ruling on defendants' motion for summary judgment, the district court properly concluded it "therefore must assume that a rock was present in the landing pit of Bang the Gong." Anderson, 496 F. Supp. 3d at 1278 n.7.

-8-

3d at 1280. We agree with the district court that Anderson offered "little more than speculation" supporting her contentions that the rock was present before the pit was filled and would have been discovered had the construction crew not acted with greater-than-ordinary negligence. Id. at 1284. To avoid summary judgment, the nonmoving party must provide "sufficient probative evidence" based on "more than mere speculation [or] conjecture." Ball v. City of Lincoln, 870 F.3d 722, 727 (8th Cir. 2017) (quotation omitted).

We further agree with the district court that Anderson submitted insufficient evidence to establish that defendants acted with greater-than-ordinary negligence during or after the race. The district court estimated that Anderson was injured at approximately 1:00 pm.[4] The court carefully reviewed when defendants would have learned that four other participants reported similar injuries before concluding that the record did not support Anderson's contention that Rugged Races knew or should have known of a rock in the landing pit in time to take preventive action. 496 F. Supp. 3d at 1278-80. Anderson argues prior notice is irrelevant because Rugged Races created the danger. Rugged Races constructed the obstacle, but there is no evidence that Rugged Races placed a dangerous rock in the pit, only circumstantial evidence that it failed to discover a hidden danger. Under Minnesota law, landowners are not "insurers of safety of their patrons." Hanson, 145 N.W.2d at 873. "Unless the dangerous condition actually resulted from the direct actions of a landowner or his or her employees, a negligence theory of recovery is appropriate only where the landowner had actual or constructive knowledge of the dangerous condition." Rinn v. Minn. State Agric. Soc'y, 611 N.W.2d 361, 365 (Minn. Ct. App. 2000).

---

[4]The district court estimated 1:00pm "based on the fact that Anderson did not report her injury until 1:15 pm, after she had hurt her foot, crawled out of the pit, reported her need for medical attention, waited for a medic to arrive, and been transported to the medical tent." Anderson, 496 F. Supp. 3d at 1275 n.4.

Here, the first two injuries were similar to Anderson's and occurred earlier, but neither injury report mentioned a rock in the pit, only that the injured participant "landed wrong" or "jumped into . . . uneven terrain." The other three injuries, including Anderson's, occurred between 1:00-1:30pm. The injury reports reported there was a rock in the pit, but Rugged Races was not made aware of these reports in time to put it on notice that preventive action might be needed. See Otis v. First Nat'l Bank of Minneapolis, 195 N.W.2d 432, 433 (Minn. 1972) (no actual or constructive notice when hazard only present for 20 minutes). Because "an act or omission is not negligent unless the actor had knowledge or notice that it involves danger to another," Rugged Races' failure to remove the rock from the landing pit before Anderson's injury is not a sufficient showing of greater-than-ordinary negligence. Rue v. Wendland, 33 N.W.2d 593, 595 (Minn. 1948). And given the nature of the obstacle and the evidence of Rugged Races' careful inspection procedures when creating the obstacle, the record does not provide sufficient evidence that any uneven terrain in the landing pit was the product of greater-than-ordinary negligence.

Finally, Anderson argues that Rugged Races failed to *maintain* the water level in the Bang the Gong pit to the depth required by its protocol, a further example of greater-than-ordinary negligence. The district court declined to consider this issue because Anderson first raised it at the summary judgment hearing. 496 F. Supp. 3d at 1285 n.11. As Anderson "did not sufficiently present [the] argument" to the district court, we will not consider it on appeal. Cole v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., 533 F.3d 932, 936 (8th Cir. 2008).

## III. Conclusion

In summary, our careful review of the record confirms the district court did not err in concluding Anderson failed to establish greater-than-ordinary negligence as a matter of law. Accordingly, her negligence claims are waived by the valid and

enforceable exculpatory clause in the Race Participant Agreement. The judgment of the district court is affirmed.

_____