# United States Court of Appeals

## For the Eighth Circuit

_____

No. 22-2075

_____

H&R Block, Inc.; HRB Innovations, Inc.

*Plaintiffs - Appellees*

v.

Block, Inc.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 21, 2022
Filed: January 24, 2023

_____

Before GRUENDER, MELLOY, and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

Block, Inc. appeals from an order granting in part H&R Block, Inc. and HRB Innovations, Inc.'s (collectively, "H&R Block") motion for a preliminary injunction. The district court enjoined Block, Inc. from engaging in the following conduct:

1.      from using "Block, Inc.," or "Block," or a close variant, such as "Blocks," in connection with or in close proximity to Cash App Taxes

-1-

or the green square Cash App Taxes logo. This means that Defendant cannot operate Cash App Taxes as a feature of Cash App or be linked to Cash App through a separate application so long as Cash App also refers to Block, Inc. It also means that Cash App Taxes cannot be owned by a legal entity with the word "Block" in it.

2.      from publicly communicating though advertising, press releases, social media, on its websites, or other public tools, that it is associated with Cash App Taxes or any platform or internet function that contains or embeds Cash App Taxes or other brands or products associated with taxes or tax services.

H&R Block claims that use of "Block" and a green square logo in connection with tax services: (1) is likely to cause confusion because H&R Block and Block, Inc. both offer overlapping services, including tax preparation and filing, other related financial services, and charitable services; (2) has confused consumers, the media, and investors; and (3) will cause irreparable harm, as it will undermine H&R Block's ability to control its public image and perception and lead consumers to incorrectly believe Block, Inc's tax service is connected to H&R Block or one of the "building blocks" in the Block, Inc. family of brands. For the reasons stated below, we reverse and vacate the preliminary injunction.

## I.      BACKGROUND

H&R Block was founded in 1955 as a bookkeeping business. It now specializes in income tax preparation and other tax and financial services. Having invested billions of dollars on national advertising campaigns, H&R Block has developed a broad market presence, both in person and online. H&R Block's financial services include: pre-paid debit cards, lines of credit, loans, access to credit scores, money management, payment processing, and mobile banking platforms, such MyBlock. Under its "Block Advisors" brand, H&R Block offers tax, financial, accounting, bookkeeping, and payroll services to small businesses. H&R Block also operates a community impact program called "Make Every Block Better." The company asserts that it is known today as not only "H&R Block" but also "Block."

As part of its branding, H&R Block owns several federal trademark registrations and uses a green square logo in connection with its products and services.

Square, Inc., founded in 2009, began with a product called "Square" that was a payment card reader and point-of-sale software, which allowed businesses and individual sellers to accept customer payments. Over time, Square, Inc. acquired or developed other businesses. One of its businesses is Cash App, which started in 2013 as Square Cash. Cash App is a peer-to-peer money transfer service that allows users to deposit and store money on the app. Cash App's name and logo are federally recognized trademarks in the form of a stylized white dollar sign surrounded by a green square logo with rounded corners. Cash App is purely digital, there are no brick-and-mortar stores, and the services are not available in online marketplaces. In November 2020, Square, Inc. acquired free tax service Credit Karma Tax, which was rebranded "Cash App Taxes" and integrated into the Cash App platform for the 2022 tax season. Cash App Taxes users must download and install Cash App to access the free tax services.

Square, Inc. was renamed Block, Inc. in December 2021. The company filed an application to register the name "Block".[1] In its trademark application, Block

---

[1]While this appeal was pending, the United States Patent and Trademark Office issued a Non-Final Office Action refusing to grant Block, Inc.'s application to register a design mark using the work "Block" because of the similarity of the registered mark(s) to the proposed mark and the similarity of the goods and/or services is likely to cause consumer confusion. Block, Inc. has been given six months from November 15, 2022, to respond with evidence and arguments in support of registration. This tentative decision by the USPTO was not before the district court when it granted H&R Block's motion for a preliminary injunction. Given its tentative nature, we give this decision little weight. See Everest Cap. Ltd. v. Everest Funds Mgmt., L.L.C., 393 F.3d 755, 764 (8th Cir. 2005) (upholding the district court's exclusion of USPTO decision suspending application of registration mark because there may be a likelihood of confusion on the ground that "the Trademark Office suspension notice had little probative value because it stated a tentative opinion, not an administrative finding of fact based upon an adequate record").

stated its intention to use the new name and logo for "holding company services," including business management, administration, promotion, and consulting services for subsidiaries. It selected the name "Block" for a number of reasons, including its association with "building blocks, neighborhood blocks and their local businesses, communities coming together at block parties full of music,[2] a blockchain, a section of code, and obstacles to overcome[,]" and in connection with the adoption of a "House of Brands" marketing architecture, which involves separating the corporate identity from the names of the businesses or products the business owns. Block, Inc.'s chief executive officer publicized the name change on his Twitter account, which has over six million followers. The company's business units, such as Cash App, Square, and TIDAL, were included in publicity surrounding the name change. References to Block, Inc. now appear on the Cash App website and in connection with its mobile applications.

After announcement of the rebrand, some social media users posted comments about whether the name change was too close to H&R Block, while others opined that people know the difference between H&R Block and Block, Inc. Some articles linked Cash App and its new tax services to "Block." Other publications contained stories about Cash App under profiles about H&R Block. H&R Block's chief executive officer testified that he was not concerned about the green square logos of Cash App and Credit Karma[3] until Block, Inc.'s name change and its acquisition and integration of Credit Karma Tax into Cash App Taxes.

---

[2]Block, Inc.'s businesses also include TIDAL (a music streaming service), Spiral (a business to promote the adoption blockchain-based currency Bitcoin), and TBD (a decentralized finance platform in development, which is also based on blockchain technology).

[3]Prior to its purchase by Block, Inc., Credit Karma Tax operated within the Credit Karma mobile app, which was identified by a dark green square with white "ck" script letters.

-4-

Fifteen days after the name change was announced, H&R Block commenced this action alleging infringement on its trademark rights, in violation of the Lanham Act, 15 U.S.C. § 1114, and Missouri law. Shortly after commencing the action, H&R Block moved for a preliminary injunction. After analyzing the familiar Dataphase[4] factors, the district court granted in part H&R Block's request for a preliminary injunction. Block, Inc. timely filed this interlocutory appeal. We granted Block, Inc.'s motion for a stay and expedited the appeal.

## II. DISCUSSION

A preliminary injunction is an "extraordinary remedy never awarded as of right." Progressive Techs., Inc. v. Chaffin Holdings, Inc., 33 F.4th 481, 485 (8th Cir. 2022) (quoting Winter v. Nat'l Res. Def. Council, Inc., 555 U.S. 7, 24 (2008)). A plaintiff seeking a preliminary injunction bears the burden of showing that such extraordinary relief is warranted. Dataphase, 640 F.2d at 113. Under the familiar Dataphase analysis, a party seeking a preliminary injunction must demonstrate: (1) the threat of irreparable harm; (2) the state of the balance between the harm and the injury granting an injunction will inflict on other parties; (3) the probability it will succeed on the merits; and (4) the public interest. Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc., 815 F.2d 500, 503 (8th Cir. 1987) (citing Dataphase, 640 F.2d at 113-14).

While mindful that a movant carries a "heavier" burden when granting a preliminary injunction has the effect of awarding the movant substantially the relief it could obtain after a trial on the merits, see id., we review the district court's ultimate ruling on a preliminary injunction "for abuse of discretion, with factual findings examined for clear error and legal conclusions considered *de novo*." Brakebill v. Jaeger, 932 F.3d 671, 676 (8th Cir. 2019). "An abuse of discretion occurs when a relevant factor that should have been given significant weight is not

---

[4]Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment." Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 893 (8th Cir. 2013) (quotation omitted).

## A.  Probability of Success on the Merits

Trademark infringement may be established by showing "the use of similar marks on similar or related products or services if such use creates a likelihood of confusion." Select Comfort Corp. v. Baxter, 996 F.3d 925, 932 (8th Cir. 2021). To establish trademark infringement, H&R Block must show: (1) it has a valid, protectible mark, and (2) there is a likelihood of confusion between its mark and the marks that Block, Inc. is using. Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc., 908 F.3d 313, 322 (8th Cir. 2018); see also 15 U.S.C. § 1125(a)(1)(A).

Assuming, without deciding, the disputed issue of whether H&R Block has a valid, protectible mark for "Block", we turn to the second prong required for establishing trademark infringement. The district court's determination on likelihood of confusion is a finding of fact that we review for clear error. Select Comfort, 996 F.3d at 934. The "core inquiry" when assessing the likelihood of confusion is "whether the relevant average consumers for a product or service are likely to be confused as to the source of a product or service or as to an affiliation between sources based on a defendant's use." Id. at 933. Our circuit has set forth a list of nonexclusive, nonexhaustive factors to assess likelihood of confusion, which includes: "(1) the strength of the owner's mark; (2) the similarity of the owner's mark and the alleged infringer's mark; (3) the degree to which the products compete with each other; (4) the alleged infringer's intent to 'pass off' its goods as those of the trademark owner; (5) incidents of actual confusion; and (6) the type of product, its cost and conditions of purchase." Id. (citing SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980)). "[N]o one factor controls, and because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases." Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus

Christ's Church, 634 F.3d 1005, 1009 (8th Cir. 2011) (quoting Kemp v. Bumble Bee Seafoods, Inc., 398 F.3d 1049, 1053 (8th Cir. 2005)).

In evaluating and weighing each of these factors, the district court found that none of the six factors favored Block, Inc.  It concluded that one factor—competitive proximity—favored H&R Block; two other factors—strength of the mark and similarity of the marks—"heavily" or "strongly" favored H&R Block; one factor—actual consumer confusion—"slightly" favored H&R Block, and one factor—consumer sophistication—tipped in H&R Block's favor or was neutral.  Block, Inc. contends the district court (a) legally erred by giving no weight to its evidence regarding lack of consumer confusion; (b) wrongly compared H&R Block with Block rather than the actual brands used for Block, Inc.'s tax services (Cash App and Cash App Taxes); and (c) abused its discretion in weighing the equities.

### 1.    Strength of H&R Block's Marks

When examining the likelihood of consumer confusion, "[a] strong and distinctive" mark is "entitled to greater protection than a weak or commonplace one."  SquirtCo., 628 F.2d at 1091.  We have noted that evidence regarding the amount of money a company has spent on advertising "is circumstantial evidence of commercial strength, but says little about 'minds of consumers,' which is the relevant unit of analysis for likelihood of confusion."  ZW USA, Inc. v. PWD Sys., LLC, 889 F.3d 441, 446 (8th Cir. 2018) (quoting KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 117 (2004)).  Although the parties disputed many of the facts and their significance, there is adequate support for the trial court's finding that H&R Block demonstrated its registered marks are commercially strong and its common law mark "Block" was relatively strong.  Given the evidence in the record, the district court did not clearly error in assessing the strength of H&R Block's marks or by finding this factor weighed in favor of H&R Block.

## 2. *Similarity of the Marks*

When analyzing the similarity of the marks at issue, courts are to examine "the impression that each mark in its entirety is likely to have on a purchaser exercising the attention usually given by purchasers of such products." Id. (quoting Duluth News-Trib., a Div. of Nw. Publ'ns, Inc. v. Mesabi Publ'g Co., 84 F.3d 1093, 1097 (8th Cir. 1996)). "Otherwise similar marks are not likely to be confused when used in conjunction with the clearly displayed name of the manufacturer." Id. at 447 (cleaned up). Here, the district court found visual similarities between H&R Block's standalone green square and the Cash App logo consisting of a dollar sign surrounded by a green square logo with rounded corners. It further found that "Block" is the distinguishing feature in H&R Block's family of "Block" marks and that Block, Inc. is also using "Block" as its distinguishing feature. The district court determined that the similarity factor weighed "strongly" H&R Block's favor.

Below (and on appeal), Block, Inc. highlighted social media posts recognizing H&R Block and Block, Inc. as different companies. Block, Inc. also pointed to market conditions and the way consumers interact with the products to demonstrate that similarity and confusion between Block, Inc. and H&R Block is diminished. As noted by the district court, conditions of purchase provide an opportunity to differentiate the parties' products—Cash App is accessible only by downloading an app while H&R Block's services are widely available in person, through stand-alone software sold at many retailers, and on an app. Block, Inc. asserts it only offers tax services under Cash App's branding, not Block, Inc.'s branding. To get to Cash App Taxes, Block, Inc. maintains that customers must first download Cash App from either the Google Play Store or the Apple App store, navigate through the Cash App application, and select the Cash App Taxes feature. During that journey, Block, Inc. asserts that consumers encounter its corporate name in "fine print," such as in the Cash App Terms of Service, the Cash App Consent to Disclosure, and other necessary legal disclosures that are required to reference the official corporate entity. In discounting these aspects of the products, the district court determined that "an 'appreciable' number of consumers are likely to read agreements to which they are

committing themselves" and that "Cash App itself has several references to Block, Inc.," although it provided no cite to evidence in the record or other authority supporting these findings. Dist. Ct. Order at 36.

Upon review of the record, there is apparent similarity between the marks at issue. The district court's findings on the similarity factor are a permissible view of the evidence; however, there is evidence in the record, as highlighted by Block, Inc., to undermine the district court's ultimate conclusion that the similarity factor "strongly" favors H&R Block. When examining all the evidence in the record, there are observable differences between the two logos and the competing products. While both companies are targeting consumers looking for free tax services, the products are available through different means. Based on the record as a whole, it was clear error for the district court to conclude the similarity factor "strongly" favored H&R Block.

### 3. Product Competition

H&R Block and Block, Inc. provide some overlapping services and compete for consumers interested in free tax preparation services. Direct competition can increase the likelihood of consumer confusion. ZW USA, Inc., 889 F.3d at 448; see Anheuser-Busch, Inc. v. Balducci Publ'ns, 28 F.3d 769, 774 (8th Cir. 1994) (citations omitted) (noting the likelihood of confusion has an expansive interpretation that protects against use of a "mark on any product or service which would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by the trademark owner"). Although the products provided by each company are accessible through different channels, a reasonable consumer looking for free tax services might assume that a brick-and-mortar service provider, like H&R Block, could also have an app. The district court did not clearly err in finding the two companies are in close competitive proximity, which renders confusion more likely, or that this factor favored of H&R Block.

### 4.     Intent to Confuse the Public

The district court found the record had not been fully developed on whether Block, Inc. intended to mislead and cause consumer confusion when Square acquired a tax business and changed its name to Block, Inc.  Without a developed record, the court found this factor favored neither party.  We find no clear error in the district court's examination of the intent factor.

### 5.     Evidence of Actual Confusion

In analyzing evidence of actual confusion, the district court relied on articles that appeared to associate Cash App with H&R Block and credited the social media posts submitted by H&R Block reflecting consumer confusion.  The court found unpersuasive the social media posts from Block, Inc. suggesting confusion would be unlikely.  H&R Block did not submit evidence identifying any consumer who had ever actually confused Cash App taxes with any of H&R Block's products.  H&R Block conceded at oral argument that it had "not identified for us a single customer who used Cash App, thinking it was an H&R Block product."  Hrg. Tr. 90:19-21.  The district court clearly erred in finding evidence of actual consumer confusion.  Cf. Duluth News-Trib., 84 F.3d at 1098 (demonstration of actual confusion through several instances of misdirected mail and phone calls failed to raise a factual dispute because the evidence was vague, unreliable, *de minimis*, and showed inattentiveness on the part of the caller or sender rather than actual confusion).

### 6.     Consumer Sophistication

When examining consumer sophistication for purposes of trademark infringement, a court is to stand "in the shoes of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods."  General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 627 (8th Cir. 1987) (quotation and citation omitted).  The district court, in applying this standard, found that even if conditions of purchase

provide some opportunity to differentiate the parties' products, the purchasing conditions are not so different that they dispel the risk of confusion. Thus, even careful consumers could be confused about whether H&R Block is affiliated with Block, Inc., particularly in the context of do-it-yourself tax preparation. The district court concluded this factor tips in H&R Block's favor, or at a minimum, is neutral. The district court's interpretation of the evidence is sustainable on this record, and we are not left with a definite conviction that the district court made a mistake in analyzing or weighing this factor.

### 7. Overall Weighing of Evidence of Likelihood of Confusion

The district court's weighing of the SquirtCo factors is a factual finding subject to clear error review. See Kemp, 398 F.3d at 1053-54 (citations omitted). To succeed on the merits of its trademark infringement claim, H&R Block must show that Block, Inc.'s use of a protected mark "creates a likelihood of confusion, deception, or mistake on the part of an appreciable number of ordinary" consumers. Gen. Mills, Inc. v. Kellogg Co., 824 F.2d 622, 626 (8th Cir. 1987). The burden rests on H&R Block to demonstrate a likelihood of consumer confusion. See KP Permanent Make-Up, Inc., 543 U.S. at 124 (a plaintiff claiming infringement "must show likelihood of consumer confusion," while a defendant claiming a fair use defense has no burden to negate confusion); ZW USA, Inc., 889 F.3d at 446 (stating the owner of the mark must show "the defendant's actual practice is likely to produce confusion *in the minds of consumers* about the origin of the goods or services in question").

Before the grant of a preliminary injunction is warranted, our precedent requires H&R Block to "show a probability of confusion, not merely a possibility." Lovely Skin, Inc. v. Ishtar Skin Care Prods., LLC, 745 F.3d 877, 887 (8th Cir. 2014). To satisfy the requisite probability standard, "there must be a substantial likelihood that the public will be confused." Vitek Sys., Inc. v. Abbott Laboratories, 675 F.2d 190, 192 (8th Cir. 1982) (citation omitted).

-11-

Analyzing likelihood of confusion is fact-intensive and reasonable minds may disagree. "The ultimate inquiry always is whether, considering all of the circumstances, a likelihood exists that consumers will be confused about the source of the allegedly infringing product." Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 602 (8th Cir. 1999). While actual confusion is not required, it is "often considered the best evidence of likelihood of confusion." Safeway Transit LLC v. Discount Party Bus, Inc., 954 F.3d 1171, 1179 (8th Cir. 2020) (quoting John Allan Co. v. Craig Allen Co., 540 F.3d 1133, 1140 (10th Cir. 2008)). Moreover, even evidence of several isolated incidents of actual confusion occurring initially upon the creation of a potentially confusing mark is insufficient to demonstrate a likelihood of confusion. Duluth News-Trib., 84 F.3d at 1098.

As noted above, the district court considered and weighed the six nonexclusive factors and found that three factors strongly favor H&R Block: the strength of its marks, the similarity of the marks, and competitive proximity. It found that one factor, actual consumer confusion, slightly favored H&R Block. Finally, it found that the intent to confuse and consumer sophistication factors were neutral.

After our review of the district court's factual findings related to the likelihood of confusion, we conclude the district court committed clear error in two of its SquirtCo factors analysis. First, as discussed in II.A.2, it clearly erred when it found that the similarity of the marks strongly favored H&R Block. Second, the district court also clearly erred when it found that the actual confusion factor slightly favored H&R Block given the totality of the evidence in the record and H&R Block's admission that it had not "identified a single customer who used Cash App thinking it was an H&R Block product."

After setting aside the clearly erroneous findings on the SquirtCo factors, we count only two factors as strongly favoring H&R Block—the strength of its marks and the products' competitive proximity. One factor, the similarity of the marks, slightly favors H&R Block. All other SquirtCo factors are neutral.

-12-

While the record supports possible confusion by some consumers, there is a paucity of evidence to rise to the level of substantial confusion by an appreciable number of ordinary consumers. Thus, it was clear error for the district court to find a likelihood of confusion. First, "[a]ctual confusion in the marketplace is often considered the best evidence of likelihood of confusion." Safeway Transit LLC, 954 F.3d at 1179. Here, the district court clearly erred in finding evidence of actual confusion. The record shows several incidents of potential confusion occurring shortly after Block, Inc.'s name change. These incidents include social media posts—some of which reflect consumer confusion and others that do not—and several news articles published within a couple months of Block, Inc.'s name change that can be read to reflect confusion about whether the Cash App services are being offered by H&R Block. This dubious evidence is insufficient for H&R Block to satisfy its burden of showing a substantial likelihood of confusion about whether Cash App Taxes is affiliated with H&R Block by an appreciable number of ordinary consumers. Second, in the context of this case, we think that the actual confusion and similarity factors carry significant weight because an appreciable number of ordinary consumers must be likely to be confused. See Select Comfort, 996 F.3d at 933; Gen. Mills, 824 F.2d at 626. Yet here, at most H&R Block has shown that the marks are slightly similar, its own marks are strong, and there is competitive proximity. Keeping in mind that there must be "a substantial likelihood that the public will be confused," Vitek Sys., 675 F.2d at 192, it was clearly erroneous for the district court to conclude there is a likelihood of confusion.

The burden of showing a likelihood of success on the merits is on H&R Block, and it has not met its burden to "show a probability of confusion." See Lovely Skin, Inc., 745 F.3d at 887. It was clear error to find a likelihood of confusion from the thin evidence here. This error tilts the entire balance in favor of reversal. See Hubbard Feeds, Inc., 182 F.3d at 601 (quoting Nat'l Credit Union Admin. Bd. v. Johnson, 133 F.3d 1097, 1101 (8th Cir. 1998) (stating that a district court abuses its discretion when its decision is based on "any clearly erroneous findings of fact or any clear error on an issue of law that may have affected the ultimate balancing of the factors considered for a preliminary injunction").

### B. Irreparable Harm

Without showing a likelihood of confusion, H&R Block is not entitled to a rebuttable presumption of irreparable harm. <u>See</u> 15 U.S.C. § 1116(a) (plaintiff entitled to a rebuttable presumption of irreparable harm upon a showing of likelihood of success on the merits). Regardless of the applicability of the statutory presumption, H&R Block has shown, at best, that factual questions exist about whether a consumer will likely be confused and nothing more than speculative harm. To demonstrate irreparable harm, H&R Block must show harm that "is certain and great and of such imminence that there is a clear and present need for equitable relief." <u>Novus Franchising, Inc.</u>, 725 F.3d at 895 (quotation omitted). In other words, the harm must not only be "more than the mere possibility" of irreparable harm, it also "must be more than mere speculation." <u>Padda v. Becerra</u>, 37 F.4th 1376, 1384 (8th Cir. 2022) (citations omitted). "[F]ailure to demonstrate irreparable harm is a sufficient ground to deny a preliminary injunction." <u>Phyllis Schlafly Revocable Trust v. Cori</u>, 924 F.3d 1004, 1009 (8th Cir. 2019) (quoting <u>Gen. Motors Corp. v. Harry Brown's, LLC</u>, 563 F.3d 312, 320 (8th Cir. 2009)).

The harm H&R Block identifies stems from consumer confusion that purportedly risks damaging its brand. Given the paucity of evidence concerning consumer confusion, H&R Block's worry about potential negative publicity and loss of intangible assets, such as reputation and goodwill, is speculative and inadequate to demonstrate "a clear and present need for equitable relief." <u>See</u> <u>Padda</u>, 37 F.4th at 1384-85 (determining that without more detailed information, movant failed to specifically identify the harm he will suffer or how the harm is more than reparable, economic damages); <u>see also</u> <u>Calvin Klein Cosmetics Corp.</u>, 815 F.2d at 505 (concluding that because the district court erred in finding success on the merits, its findings regarding irreparable harm and the balance of hardships are also insufficient to support the grant of a preliminary injunction). Because the record contains insufficient evidence demonstrating that H&R Block will suffer irreparable harm absent a preliminary injunction, H&R Block is not entitled to injunctive relief.

### C.    Remaining Dataphase Factors

As to the remaining Dataphase factors, the litigants are million-dollar companies. Both parties have invested substantial time and expended millions of dollars on advertising and developing their products and services. There is no indication that Block, Inc. would be unable to provide adequate compensation if found liable for trademark infringement. In contrast, the injunction prohibits Block, Inc. from operating Cash App Taxes. The balance of equities does not favor injunctive relief. See MPAY Inc. v. Erie Custom Comput. Applications, Inc., 970 F.3d 1010, 1020 (8th Cir. 2020) (appellant failed to show balance of harm tips in its favor when injunction would prevent appellees from using the software that forms the basis of their business).

## III.    CONCLUSION

Our task is to examine "whether the district court abused its discretion in assessing whether the balance of equities so favors [the movant] that justice requires the court to intervene to preserve the status quo until the merits are determined." Wildhawk Invs., LLC v. Brava I.P., LLC, 27 F.4th 587, 598 (8th Cir. 2022) (cleaned up). Because the evidence in the record is inadequate to establish substantial consumer confusion by an appreciable number of ordinary consumers, nor irreparable harm that is concrete and imminent, H&R Block failed to satisfy its burden. If there is in fact trademark infringement, H&R Block will have a full opportunity to demonstrate that infringement at a trial on the merits. We reverse and vacate the preliminary injunction.[5]

---

[5]We decline to consider Block, Inc.'s other argument that the preliminary injunction violates the First Amendment by restricting commercial speech. See Anderson v. Rugged Races, LLC, 42 F.4th 955, 962 (8th Cir. 2022) (declining to address arguments not presented to the district court).

MELLOY, Circuit Judge, Dissenting.

I respectfully dissent. The district court granted H&R Block a preliminary injunction prohibiting Block, Inc. from using "Block" in connection with Cash App Taxes. A finding of clear error requires the appellant to clear a high hurdle. Because I do not believe the appellant met the burden in this case, I would affirm. It was not clear error to find a likelihood of confusion or an abuse of discretion to grant the limited injunction as applied to tax services.

A. Likelihood of Success

The district court wrote a lengthy and detailed opinion analyzing the SquirtCo. factors in a well-reasoned opinion. After reviewing all of the SquirtCo. factors the district court concluded, "Block, Inc.'s use of 'Block' in commerce in the context of the relevant market is likely to cause confusion." I find no clear error in the analysis of the individual factors or the weighing of the factors.

The majority found no clear error in the district court's conclusion that strength of mark and competitive proximity favor H&R Block.

In my view, strength of mark strongly favors H&R Block. H&R Block has ten thousand store fronts, two million small business clients, and a website with over fifty million logins. It is one of the most well-known tax service companies in the country, serving millions of customers each year. Not only has H&R Block used "Block" in connection with tax services for decades, it has also invested billions of dollars into the mark. The success of this investment is confirmed by consumer surveys which show consumers associate "Block" with H&R Block in the tax space. The long-term and wide-spread use shows the strength of H&R Block's mark.

Competitive proximity also favors H&R Block. Both H&R Block and Block, Inc. service the same population in the tax services market. Both target the "underbanked." Using the name Cash App Taxes does not mean Block, Inc. is not

-16-

competing with H&R Block. Cash App Taxes is not a separate entity, therefore Block, Inc. is directly competing against H&R Block in this market. Both entities use "Block" in the same market to target the same consumers. Additionally, both companies offer charitable services under a "Block" umbrella.

The district court and majority both conclude two factors are neutral, consumer sophistication and intent. I agree future development of the record as to these two factors is required.

The majority disagreed with the district court as to only two factors: similarity of marks and actual confusion.

I find no error in the district court's conclusion that the similarity of marks factor strongly favors H&R Block. Finding clear error requires finding that reasonable minds could not disagree based on the record. The ample evidence presented, and the extended litigation, shows that reasonable minds can disagree. Both companies use the term "Block" and green square logos in connection with tax services. Block, Inc. argues that their "house of brands" model prevents Block, Inc. from being associated with the tax services offered by Cash App Taxes. The evidence indicates otherwise.

Block, Inc. publicly connected Cash App Taxes to Block in several ways. First, the terms and services for Cash App Taxes, which legally binds the consumer, references "Block, Inc." Second, Block, Inc.'s social media posts and websites connect "Block, Inc." to Cash App Taxes. Finally, when customers complain about Cash App Taxes to the Better Business Bureau Block, Inc. responds as "Block, Inc." not Cash App Taxes.

In addition to the actions taken by Block, Inc., actions by individual employees and third parties connect Cash App Taxes to Block. Employees of Cash App Taxes publicize that they work for "Cash App at Block, Inc." The Wall Street Journal wrote an article that referred to "Block's Cash App." Other media websites

linked articles about Cash App Taxes to pages associated with H&R Block. There is ample evidence to conclude that both companies use the same word, "Block," in connection with their tax services.

Likewise, I find no error in concluding actual confusion slightly favors H&R Block. As discussed above, several companies have used phrases such as "Block's Cash App" or linked articles about Cash App Taxes to H&R Block. Some of the connections might have been made by algorithms, but the result is a webpage that is easily confusing to the average consumer. Additionally, several people noted on social media platforms that Block, Inc.'s new name might be confusing to consumers. There is evidence that actual people saw the possibility of confusion. By acting quickly to enforce its legal rights, H&R Block got ahead of any potential confusion with customers. H&R Block should not be punished for taking swift action. Accordingly, the minimal evidence of customer confusion should not be used against H&R Block.[6]

Because no factors favor Block, Inc. and several factors strongly favor H&R Block, there was no clear error in finding the totality of the factors shows a likelihood of confusion. As the majority points out, "no one factor controls, and because the inquiry is inherently case-specific, different factors may be entitled to more weight in different cases." Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church, 634 F.3d 1005, 1009 (8th Cir. 2011) (quoting Kemp v. Bumble Bee Seafoods, Inc., 398 F.3d 1049, 1053 (8th Cir. 2005)). In a case where two companies operating within the same industry, and targeting the same customers, use the same mark and a similar logo it is difficult to say it is clear

---

[6]Presumably there will be significantly more evidence as to this and the other facts when the case returns to the district court. As the majority opinion noted, the injunction was stayed by our Court. We are now entering the second full tax season where Block, Inc. and H&R Block compete. Based on two years of actual tax preparation, I anticipate both sides will be able to produce evidence of actual consumer confusion or lack thereof.

error to find a likelihood of confusion. Reasonable minds may disagree, but it was not clear error for the district court to conclude there was a likelihood of confusion.

B. Irreparable Harm

Likewise, it was not clear error for the district court to conclude that the threat to goodwill was irreparable harm. Even without direct evidence of customer complaints or harm to reputation this court has found that it was not clear error to conclude that a threat to goodwill was an irreparable harm. United Healthcare Ins. Co. v. AdvancePCS, 316 F.3d 737, 742 (8th Cir. 2002). Again, this analysis is very fact dependent, and I do not believe the district court clearly erred in its analysis.

C. Balance of Harms

Finally, it is not contested that H&R Block has spent a significant amount of time and money building a brand around "Block" and that harm to the goodwill of "Block" would harm H&R Block's business. It is also uncontested that an injunction would harm Block, Inc. It is not clear error to find that the harm would be greater to the entity who has spent decades of time and great sums building a brand, versus a company who just recently began using a mark.

**Conclusion**

Because I find no clear error in the analysis of individual likelihood-of-confusion factors or in the overall synthesis of those factors, and because I find no abuse of discretion in the balancing of preliminary injunction factors, I would affirm the well-reasoned judgment of the district court.

_____